## TILLAR *v.* REYNOLDS.

### Opinion delivered November 7, 1910.

1. ACTIONS—JOINDER.—An action for the benefit of the estate of one alleged to have been wrongfully killed may be joined with an action based upon the same killing brought for the benefit of the widow and next of kin of such deceased. (Page 363.)

2. MASTER AND SERVANT—RESPONDEAT SUPERIOR.—A master who puts a servant in a place of trust or responsibility, or commits to him the management of his business, is responsible where the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances or occasion, goes beyond the strict line of his duty or authority, and inflicts an unjustifiable injury upon another. (Page 363.)

3. DAMAGES—UNLAWFUL KILLING—EXCESSIVENESS.—A verdict awarding to a widow and minor children the sum of $3,750 for the unlawful killing of their husband and father was not excessive where the deceased was a strong man, with an expectancy of life of 34 years and earning from $50 to $60 per month, most of which he contributed to their maintenance and support. (Page 366.)

Appeal from Drew Circuit Court; *Henry W. Wells*, Judge; affirmed.

*James C. Knox*, for appellant.

1. Two separate and distinct causes of action were set up in the complaint, one for the benefit of the estate and the other for the benefit of the next of kin. The court erred in overruling the demurrer. 53 Ark. 117; 59 Ark. 215. And this error is not cured by the consolidation act of 1905, p. 798.

2. If the deceased died from any other cause than that alleged in the complaint, there can be no recovery. The evidence that he died from the injuries alleged is not sufficient to sustain the verdict. Kirby's Digest, § § 6289-90.

3. There could be no recovery for the benefit of the widow and next of kin, unless it be shown by competent testimony who the next of kin are (which is not shown in this case either in pleadings or proof), and that deceased had an earning capacity. On this point, proof that some time previous to his arrest and conviction he had worked a month and a half at wages of 18 to 20 cents per hour, was not sufficient, in view of further proof that he had not only ceased to work, but had moved away from the place where such wages were earned, to show that he had an earning capacity sufficient to form a basis for a measure of damages in this case.

4. The second instruction errs in holding the employer liable even though the agent or employee goes beyond the strict line of his duty or authority. There has been here not only no ratification by the appellant of the act of the employee, but there was a discharge of his whole duty by giving positive orders to the employee to observe the penitentiary rules for the government of prisoners.

*R. W. Wilson*, for appellee.

1. The demurrer was properly overruled. There was no misjoinder, and if separate actions had been brought the court

could have consolidated them. Acts 1905, p. 798; 86 Ark. 138; 88 Ark. 124-8; 91 Ark. 51-2; Kirby's Digest, § 6079; *Id.* § 6148.

2. Appellant fails to set out the evidence on which he relies to sustain his contention that the evidence does not support the verdict. For such failure the judgment should be affirmed. 90 Ark. 393. The evidence, the sufficiency of which was left to the jury, establishes beyond question that Gentry unlawfully and unmercifully beat the deceased on the naked body while stretched across a log or sill, on his back and loins, and that such beating over the loins is calculated and likely to produce death, and this evidence is supported by the physical facts, *i. e.,* passing of bloody urine, pains in kidneys and over his loins, his death, and the condition of his body. The jury could rightfully infer that death resulted from the beating. 70 Ark. 385; 89 Ark. 326; Bangs & Hardaway's American Text Book of Genito-Unrinary Diseases, 500-1-2-3; 73 Ark. 570; 44 Ark. 122.

3. The second instruction, if taken alone, is a correct declaration of the law. Cooley on Torts, 538; Wood on Master & Servant, § 307; 58 Ark. 381; 42 Ark. 542; 62 Ark. 109; 68 Ark. 249; 75 Ark. 585. If erroneous, it was cured by proof of ratification, the proof showing that appellant retained Gentry in his employment as a warden of the farm for months after the beating.

4. Gentry's act was criminal *per se.* It could not lawfully be inflicted upon the meanest prisoner for the most heinous offense. Rule 6, Penitentiary Rules for Arkansas; 44 Ark. 123; 8 Lea (Tenn.), 739; *Id.* 744; 6 Lea (Tenn.) 624; 9 Cyc. 877; 39 Fed. 599, 4 L. R. A. 628.

KIRBY, J. This suit was brought by Mrs. Mattie Reynolds, administratrix of the estate of William Reynolds, deceased, for damages for his wrongful death, caused, it was alleged, by defendant's warden, in charge of his convict farm where her intestate was detained a prisoner working out a sentence of fine and imprisonment for a misdemeanor under the lease of convicts from Lincoln County, unlawfully and brutally whipping and beating him.

The complaint contains two causes of action, sufficiently alleged in separate paragraphs, one for the benefit of the widow

and next of kin of decedent, and the other for the benefit of his estate, and in each of which damages are claimed in the sum of $5,000.

A demurrer was filed and overruled, and defendant answered, admitting that he was operating a convict farm and leasing Lincoln County convicts, and that deceased was sent to his farm under said lease, and died there a week or two after arrival; denied that William Reynolds, deceased, was assaulted or whipped by W. L. Gentry, or any one else as alleged; denied all the other allegations of the complaint; "and he says further that, if the said Reynolds was assaulted or whipped by Gentry or any other person in any manner whatever, it was without the knowledge, consent or direction of this defendant, and beyond the scope of authority of employment of the said Gentry by this defendant. Further answering, defendant says that he has faithfully carried out every item of his contract with Lincoln County in the matter of leasing prisoners in relation to the said William Reynolds; that the death of the said Reynolds was due to natural causes; that it was in no way due to any mistreatment by this defendant or his employees; that everything was done for the said Reynolds that could be done under the circumstances; that neither this defendant nor his employees are in any way responsible for his death; that the defendant is seldom about the farm, and knew nothing personally of his sickness until after his death; that as soon as his condition was discovered everything that could possibly be done for the deceased was done by the defendant and his employees;" and denied that plaintiff was entitled to punitive damages.

The jury returned a verdict for the plaintiff for damages for the benefit of the widow and next of kin in the sum of $3,750. Defendant appealed.

The evidence shows substantially that Mattie Reynolds was duly appointed administratrix; that she was the wife of William Reynolds, and they had three small children, two girls and a boy, of the ages of three, six and seven years; that William Reynolds was convicted of a misdemeanor in Lincoln County, and sentenced to a small fine and imprisonment, and sent to the convict farm of defendant, T. F. Tillar, under his lease of convicts from Lincoln County, about July 8, and remained there

in the custody and under the control of defendant's warden, G. L. Gentry; that on the morning of July 18, the warden compelled him to take off his clothes and lie down across a log or block, face downward, and whipped him on the bare back with a leather strap about 30 inches long and from one-half to three quarters of an inch thick. One witness says it was an inch thick. This strap was fastened to a staff, and "Mr. Gentry handled the strap with both hands, over his shoulders," and struck deceased from 12 to 15 licks hard, one witness say; and another, that "he whipped him on the small part of his back. Gentry was standing by his side. I was standing right there. He had me here to hold him down if he bucked. The licks were hard. He hit him with both hands." That, after the whipping, he was sent to work, and the guard in charge of his squad said that he commenced complaining of his kidneys hurting him about 11 o'clock. That afternoon he acted like a drunk man, wanted to urinate frequently. "He complained of the small of his back hurting, and his kidneys hurting him. He wasn't able to work. He was urinating all evening. Every five minutes he urinated blood. I sent for Mr. Gentry to come and get him; he came and got him. The man was dead when I got in." Reynolds died that night about 8:30 o'clock without any medical attention whatever. The witnesses who prepared the body for burial stated: "We noticed a couple of black spots over the small of his back and back down otherwise on him. They were black spots about the size of my hand. Over his loins and down he was bruised pretty badly, from half way of his back down; there was a great big blue place on him right across the small of his back. They looked like they were very severe." That the beating might have caused and probably did cause his death. It showed further that Reynolds's wife and children were solely dependent upon him for support; that he was engaged in getting out staves at the time of his conviction, and shortly before for a number of months he had been making from $50 to $60 a month as a car repairer, the greater part of which he contributed to the support and maintenance of his wife and children; that he was strong and of sound bodily health, and had an expectancy of life of 34 years.;

Rule 6 of the penitentiary board is as follows:

"No convict shall for any cause be punished by whipping on his naked body; and no warden shall whip any convict except he be designated and authorized to do so by the superintendent monthly to the board, together with the causes therefor, and a witness shall be called to all whippings, and in no case shall more than ten lashes be administered at any one time."

Several instructions given are complained of, but only error in giving the one numbered 2 is insisted on here. It is copied in the opinion.

The appellant raises three objections, contends that there was a misjoinder of actions; that the court erred in giving plaintiff's instruction number 2 hereafter set out; argues that the evidence does not sustain the verdict, and claims that the verdict is excessive. There is nothing in the first contention. The actions could be joined, and were properly brought together, and the demurrer should have been overruled. Kirby's Digest, § § 6290, 6089; *Davis* v. *Railway,* 53 Ark. 117. If the two actions had been brought separately, they could have been consolidated by the court. Acts, 1905, c. 339; *Mahoney* v. *Roberts,* 86 Ark. 138; *Ashford* v. *Richardson,* 88 Ark. 124; *American Ins. Co.* v. *Haynie,* 91 Ark. 51.

Did the court err in giving plaintiff's instruction number 2: "You are further instructed that the employer who puts his agent or employee in a place of trust or responsibility, or commits to him the management of his business, is responsible when the agent or employee acting within the scope of his authority, through lack of judgment or discretion, or under the influence of passion, inflicts an unjustifiable injury upon another, *even though he go beyond the strict line of his duty or authority,"* the objectionable part of the instruction being the italicized words?

We think not. It is undisputed that Gentry, the warden, was defendant's agent in charge of the convict farm at the time Reynolds was delivered to the farm, and at the time of his death and for months thereafter, and that · he was instructed to observe the rules laid down by the penitentiary board governing the convicts confined in the penitentiary, and charged by defendant not to depart from said rules in the management and punishment of the convicts placed on the farm. He had

the authority to punish, and was acting within the scope of it when he inflicted the injury.

In *Ward* v. *Young,* 42 Ark. 543-4, in discussing the liability of the master for the tort of his servant, this court said: If Hawkins was clothed with the authority to protect the property, "then his act was, in law, the act of Ward, notwithstanding it may have been contrary to express orders. Having employed the servant to protect his property, or to maintain his possession, he is liable for all the acts done in pursuance of his employment, and within the power implied therefrom, even though he expressly directed the servant what to do. Having set in motion the agency for producing mischief, he is bound at his peril to prevent the mischievous consequences."

Further: "It is not necessary, in order to fix the master's liability, that the servant should, at the time of the injury, have been acting under the master's orders or directions, or that the master should know that the servant was to do the particular act that produced the injury in question. It is enough if the act was within the scope of his employment, and, if so, the master is liable, even though the servant acted *wilfully,* and in direct violation of his orders."

Continuing, on page 553: "It is generally sufficient to make the master responsible that he gave to the servant an authority or made it his duty to act in respect to the business in which he was engaged when the wrong was committed, and that the act complained of was done in the course of his employment.

"The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business or the *care of his property,* is justly held responsible when the servant through lack of judgment or discretion, or from *infirmity of temper,* or under the influence of passion aroused by the circumstances or the occasion, goes beyond the strict line of his duty or authority, and inflicts an unjustifiable injury upon another." Cooley on Torts, page 538.

In *Railway Company* v. *Hackett,* 58 Ark. 387, this court said: The question is, was he acting in the course of his employment? "If he was, the company is liable in damages for any wrongful act of his in the course of his employment, result-

ing in injury to another, though he exceeded his authority as such night watchman."

"A servant may do an act expressly forbidden by his employer, and yet, if it be within the scope of his authority, the employer may be liable for resulting injury. This rule is constantly enforced in the cases against railroads, electric light and gas companies, and it applies to private persons who employ servants to transact their business." *Pine Bluff W. & L. Co.* v. *Schneider*, 62 Ark. 116.

This court on a question of this kind quoted with approval Clark & Skyles' Law of Agency: "It is a well-established rule that a principal is liable for all torts, negligences, or rather, malfeasances, committed by his agent in the course of his employment and for the principal's benefit, although such torts or negligences are not authorized by the principal, or even though he had forbidden or disapproved of them, and the agent disobeyed or deviated from his instructions in committing them. * * * This rule is not based on the ground that the agent had authority, express or implied, to commit the tort, as is the case with contractual obligations binding on the principal; but is based on the ground that in such cases the agent represents the principal, and all acts done by the agent in the course of his employment are of the principal, and it is also on the ground of public policy that where one of two innocent persons must suffer from the agent's wrongful act, it is just and reasonable that the principal, who has put it in the agent's power to commit such wrong, should bear the loss, rather than the innocent third person." *St. Louis, I. M. & S. Ry. Co.* v. *Grant*, 75 Ark. 585.

There was no error in giving the instruction, and on the whole the instructions fairly presented the issues of fact to the jury. The evidence, although somewhat contradictory, tended strongly to show that the deceased was unlawfully and brutally whipped and beaten on his bare back with a leather strap four inches wide, and from one-half to three-quarters of an inch thick and about thirty inches long, attached to a staff or handle about 18 inches long, by defendant's agent and warden; that he wielded the strap with both hands, striking more licks than felons in the penitentiary are permitted to be whipped, and on the bare skin, even if against defendant's directions; that de-

ceased was compelled to work thereafter in the sun till he reeled and staggered like a drunken man, and was sent from the field groaning with pain and urinating blood, and died that night early, without being furnished any medical attention; that the beating might have produced, and probably did produce, death, and the jury so found, and the evidence amply sustains the verdict.

Is the verdict excessive? Was William Reynolds's life of the value of $3,750 to his widow and minor children? He was a strong man, of sound bodily health, the sole support of his wife and children, about 31 years old, with an expectancy of life of 34 years, and shown to have been earning shortly before his death from $50 to $60 a month, most of which was contributed to the maintenance and support of his family, and the jury fixed the damages at that sum, which we do not regard excessive.

Finding no error in the case, it is affirmed.