## E. L. Bruce Company v. Yax.

## Opinion delivered December 17, 1917.

1. MASTER AND SERVANT—QUESTIONS FOR JURY.—In an action by an employer in a hardwood mill for personal injuries received when the drive belt slipped off a pulley of his machine, struck him, knocked him down and dragged him under the machine, issues of negligence, contributory negligence and assumed risk were for the jury, under the evidence.

2. SAME—SCOPE OF EMPLOYMENT.—When a servant acts without reference to the service for which he is employed, and not for the purpose of performing the work of the employer, but to effect some independent purpose of his own, the master is not responsible for either the acts or omissions of the servant; but when the servant acts with reference to the services for which he is employed and for the purpose of performing the work of his employer, the acts so done are within the scope of his employment.

3. SAME—SCOPE OF EMPLOYMENT OF FELLOW SERVANT—QUESTION FOR JURY.—In an action for injuries to plaintiff operating a machine in a hardwood mill, whether a fellow servant in enlarging the pulley which drove plaintiff's machine to speed up the machine to make up for lost time was acting within the scope of his employment *held* a question for the jury.

4. SAME—SCOPE OF EMPLOYMENT—INSTRUCTION.—In an action for injuries to an employee for injuries alleged to be due to the negligence of a fellow servant in wrapping a belt around the pulley which drove plaintiff's machine, an instruction was properly refused which told the jury in effect that defendant would not be liable if the fellow servant in wrapping such pulley was acting on his own accord and without the instructions or knowledge of the defendant and without authority, express or implied, since the defendant would be liable if the fellow servant was acting within the scope of his employment, although without the instruction or knowledge of the master.

5. SAME—SCOPE OF EMPLOYMENT—EVIDENCE.—In determining whether a fellow servant was acting within the scope of his employment on a certain occasion, it was proper for the jury to consider testimony tending to show that such action was without the instruction or knowledge of the master.

6. SAME—EMPLOYERS' LIABILITY ACT—CONTRIBUTORY NEGLIGENCE AND ASSUMED RISK.—Neither contributory negligence nor assumed risk is a defense, under the Employers' Liability Act (Acts 1913, p. 734), where a corporation employer, by violating any statute enacted for the safety of its employees, thereby contributed to the injury or death of such employees; in other cases assumption of risk is a complete defense, but contributory negligence only reduces the damages in proportion to the amount of negligence attributable to the employee.

7. SAME—EMPLOYERS' LIABILITY ACT—INSTRUCTIONS.—Under the Employers' Liability Act, it is important that the instructions should distinguish between the defenses of assumed risk and contributory negligence, and it is prejudicial error, where the evidence warrants it, for the court to refuse to submit the defense of assumed risk, even though it may have correctly instructed the jury on the defense of contributory negligence.

8. SAME—EMPLOYERS' LIABILITY ACT—NEGLIGENCE OF FELLOW SERVANT.—Under the Employers' Liability Act, a servant does not assume the risk of the negligence of the employer or of any of his agents, servants or employees, unless the servant had knowledge of such negligence and appreciated the dangers therefrom.

9. SAME—ASSUMED RISK—QUESTION FOR JURY.—In an action against a mill company for injuries caused when the driving belt of a machine slipped from its pulley, where there was evidence that plaintiff knew of the alleged negligence of a fellow servant in enlarging the driving pulley, the question whether he understood and appreciated the risk, and therefore assumed it, was for the jury, and it was error to refuse to submit same to the jury.

10. SAME—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE.—In an action against a corporation under the Employers' Liability Act, it was error to instruct the jury that if the danger to which plaintiff was subjected was not an ordinary and usual risk incident to the employment, and if the servant, knowing and appreciating the danger incident thereto, continued to work, he was guilty of contributory negligence; the court should have allowed the jury, under proper instructions to say as to whether or not the plaintiff was guilty of contributory negligence, and whether he assumed the risk.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; reversed.

The appellee who was near 35 years of age, was employed by the appellant, a corporation, having a hardwood mill and doing business in Arkansas. His duties were to feed flooring into what is known as an American flooring machine. The machine was the best that could be obtained in the hardwood business. Appellee represented to appellant that he had had experience as a machine man, and doing inside finishing work. Appellee stood at a table at the rear of the machine, placed the lumber on the table and shoved the same towards the machine, which caught it into an automatic feed, and thus the lumber was pulled through the machine. The machine was driven by a main feed belt that ran from the main shaft underneath the mill and drove the entire machinery.

One Sanders was in the employ of appellant as machine man, and it was his duty to look after the machine and see that it was properly operated. The superintendent of appellant told Sanders that he was expected to get 30,000 square feet of flooring through the machine in ten hours. They considered that a normal output, but there was nothing compulsory about it.

On the day appellee received his injuries, the plant had been shut down about an hour, and Sanders, in order to make up for lost time and to produce, if possible, the average 30,000 square feet, conceived the idea of enlarging the pulley on which the belt that operated the machine worked in order to make the machine run faster. Sanders wrapped an extra belt, about twelve feet long, and about one-fourth of an inch thick, around the pulley, which increased the diameter of the pulley about two inches. This would cause the machine at which appellee was working to run faster, and get the lumber through faster. When the belt was wrapped around the pulley it was laced and some brads driven through to hold it in place. The appellee was present and assisting in getting the belt around the pulley. After the pulley was wrapped Sanders instructed appellee to go ahead and

feed the machine which appellee did and in a few moments the belt slipped off of the pulley and struck appellee in the chest, knocking him down, dragged him under the front end of the machine and injured him severely.

Neither the superintendent nor other managing officers of the appellant had instructed Sanders to increase the size of the pulley in the manner indicated and they knew nothing about it until after the accident. Sanders did this of his own volition.

The appellee sued the appellant, alleging that his injuries were produced by the negligence of appellant's servants in the manner of wrapping the belt around the pulley, and in negligently operating the pulley when so wrapped at an excessively high rate of speed.

The answer denied the negligence, as alleged, and set up affirmatively that the appellee assumed the risk and was guilty of contributory negligence.

The above presents the issues and the salient features of the evidence upon which the cause was sent to a jury under instructions by the trial court, resulting in a verdict and judgment in favor of the appellee in the sum of $2,500, from which this appeal comes. Other facts stated in the opinion.

*Sherman & Landon* and *Roscoe R. Lynn,* for appellant.

1. The court erred in refusing to direct a verdict for defendant and in refusing to give instruction No. 1 requested. Kirby's Digest, § 5482; 10 Bing. 385; 26 S. W. 360; 24 L. R. A. 363; 86 S. W. 503; 144 Pac. 63; 13 S. W. 1042; 138 Pac. 621; 47 L. R. A. (N. S.) 1116; Labatt on Master & S., § § 1642-4; 85 Ark. 600; 93 *Id.* 397; 86 Mo. App. 601; 193 Mo. 299, etc.

2. It was error to refuse No. 2 requested by appellant. Cases *supra;* 26 Cyc. 1526; 29 *Id.* 1533.

3. It was error to give No. 8 for plaintiff. And the court erred in giving and refusing instructions on the defense of assumption of risk by appellee. 233

U. S. 492; 155 S. W. 638; 43 Ark. 88; 105 *Id.* 533; 96 *Id.* 387; 95 *Id.* 560-562-3; 77 *Id.* 367; 89 *Id.* 424; 220 Ill. 522; 77 N. E. 147; 4 L. R. A. (N. S.) 848.

4. The court improperly charged the jury as to matters required to be proven by appellee to entitle him to recover and assumption of risk. Cases *supra.*

*Rhoton & Helm,* for appellee; *Gardner K. Oliphint,* on the brief.

1. Sanders was acting within the scope of his authority in wrapping the pulley. 96 Ark. 358; 93 *Id.* 397.

2. There was no error in giving or refusing instructions. 98 Ark. 227; 122 *Id.* 232; 124 *Id.* 597; 98 Ark. 218; 93 *Id.* 573.

3. The instructions as to assumed risk and contributory negligence were not error. 77 Ark. 367; 90 *Id.* 567; 83 *Id.* 567; 88 *Id.* 243; 18 L. R. A. (N. S.) 698; 196 S. W. 439; 1 Thompson on Negl. (2d ed.) § 180; 67 Ark. 209; 146 Pa. St. 67; 187 S. W. 177; 88 Ark. 258; 112 S. W. 985; 101 *Id.* 142; 125 *Id.* 751; 61 S. E. 79; 18 *Id.* 584; 73 N. W. 573; 37 Mich. 205; 91 *Id.* 624; 74 Ind. 440; 35 W. Va. 500; 53 Oh. St. 43; 20 Col. 320; 177 Ill. 324; 100 S. W. 971; 86 Ark. 515; 82 *Id.* 537; 4 Thompson on Negl. (2d ed.) § § 3721 to 5318, 4618, p. 638; Labott M. & S. 3310, 3326; 98 Ark. 211, 219, and cases cited; 86 Ark. 515; 90 *Id.* 568; 71 *Id.* 518, 578, and many others.

See also 92 Ark. 502; 124 Ark. 597; 122 *Id.* 232; 97 *Id.* 489; 30 *Id.* 376; 90 *Id.* 531; 191 S. W. 236, etc. No prejudicial error is shown.

WOOD, J., (after stating the facts). (1) The evidence was sufficient to warrant the court in sending the issues of negligence, contributory negligence and assumed risk to the jury.

(2) Appellant's principal contention is that the act of Sanders in wrapping the pulley in the manner alleged and proved was not within the scope of his employment and in the line of his duty at the time, and that therefore, under the uncontradicted evidence, the appellant was not liable, and that the court should have so in-

structed the jury. This contention of appellant is not sound.

The duty of Sanders was to take charge of the machine, to look after it and see that it was operated rightly. He was requested by the superintendent to make the machine, which was one of the best of its kind, make an average of 30,000 square feet in a ten hours' run, which was the normal output for such a machine.

On the day of the injury over an hour's time had been lost and Sanders was endeavoring to make up this lost time by enlarging the pulley so as to increase the speed of the machine. Sanders was an experienced machinist, and he was placed in charge of this machine, without any specific directions however as to what he should do to make the machine produce the usual output in case there was any loss of time. No instructions upon that subject were given him one way or the other. No hard and fast rule has been or can be prescribed by which to determine what acts are within the scope of a servant's employment. Each case is governed by its own particular facts, under certain general rules of law.

Cooley says: "Where a servant acts without reference to the service for which he is employed, and not for the purpose of performing the work of the employer, but to effect some independent purpose of his own, the master is not responsible for either the acts or omissions of the servant." Cooley on Torts, 1032; 26 Cyc. 1536. Conversely, when the servant acts with reference to the services for which he is employed and for the purpose of performing the work of his employer, and not for any independent purpose of his own, but purely for the benefit of his master, it is generally held, under such circumstances, that the acts so done are within the scope of the servant's employment.

In *Sweeden* v. *Atkinson Imp. Co.*, 93 Ark. 397, 402, we said: "The act of the servant for which the master is liable must pertain to something that is incident to the employment for which he is hired, and which it is his duty to perform, or be for the benefit of the master.

It is therefore necessary to see in each particular case what was the object, purpose and end of the employment and what was the object and purpose of the servant in doing the act complained of. The mere fact that he was in the service generally of the master or that the servant was in possession of facilities afforded by the master in the use of which the injury was done would not make the act attributable to the master. The act must have been done in the execution of the service for which he was engaged.'' See also *Tillar* v. *Reynolds*, 96 Ark. 358; *Arkansas Natural Gas. Co* v. *Lee*, 115 Ark. 288. See also the well considered case of *Marlowe* v. *Bland*, 154. N. C. 140, 9 S. E. 752, 47 L. R. A. (N. S.) 1116.

Now, applying these general principles to the facts of this record, it was an issue for the jury to determine as to whether or not the acts of Sanders in wrapping the pulley were within the scope of his employment. The court did not err in refusing to take this issue from the jury, and did not err in refusing to grant appellant's prayer for instruction No. 2 on this issue.* This prayer was argumentative, abstract and calculated to mislead the jury, because, even though appellee may have acted without the instruction or knowledge of the defendant and wholly of his own accord, he might still be acting within the scope of his employment, provided the act was done for the benefit of the master and in the line of appellee's duty to operate the machine so as to produce, if possible under the circumstances, the quantity of finished flooring that the appellant's superintendent had requested in the day's run of ten hours.

In determining the issue of whether or not the machinist was acting within the scope of his employment it was proper for the jury to consider the testimony on behalf of the appellant tending to show that the machinist,

*No. 2.  The court instructs the jury that if you find and believe from the evidence in this case that Sanders in wrapping the belt about the pulley was acting without the instructions or knowledge of the defendant and wholly of his own accord, and that he had no authority, either express or implied, from the defendant to wrap such pulley, then the defendant is not liable for the acts of Sanders, and your verdict will be for defendant.

in wrapping the pulley, was acting without the instructions or knowledge of the appellant, but this is as far as the instruction should have gone. It was still for the jury to decide, after considering such testimony in connection with the other facts, as to whether or not the machinist was acting within the scope of his employment.

(3)    At the request of the appellee the court granted the following prayer for instruction: "You are instructed that plaintiff assumed all the risks and hazards ordinarily and usually incident to his employment, and that he will be presumed to have contracted with reference to such risks and hazards, if known and appreciated by him. He will be presumed to have assumed the risks incident to all dangers and defects which were apparent and obvious, if any. If he knew and appreciated the danger of the conditions complained of in this case, and you find such was a usual and ordinary risk, you must find for the defendant. But if you find the danger complained of was not an ordinary and usual risk incident to his employment, and plaintiff continued to work, knowing and appreciating the danger, he was guilty of contributory negligence."

This suit was instituted under our statute commonly known as the employers' liability act, Act 175 Acts of 1913, p. 734. The first section of the act provides, in substance, that every corporation, except while engaged in interstate commerce, shall be liable to its employees for personal injuries sustained by them resulting in whole or in part from the negligence of the corporation or any of its officers, agents or employees.

Neither contributory negligence nor assumption of risk is a defense under the statute where the corporation by violating any statute enacted for the safety of its employees thereby contributed to the injury or death of such employees. In all other cases contributory negligence is not a complete defense, but assumption of risk is. There is a clear distinction in the statute between the defenses of assumption of risk and contributory negli-

gence. Except in cases where a violation of the statute by the corporation caused or contributed to the injury, contributory negligence does not bar a recovery, but only diminishes the damages in proportion to the amount of negligence attributable to the employee; but except in such cases where a violation of the statute by the corporation caused or contributed to the injury, assumption of risk is a complete defense.

Our statute is modeled after the Federal Employers' Liability Act, and the Supreme Court of the United States, in *Seaboard Air Line Ry.* v. *Horton,* 233 U. S. 492, clearly recognizes the distinction drawn in the Federal statute between the defenses of contributory negligence and assumption of risk as follows: "Contributory negligence involves the notion of some fault or breach of duty on the part of the employee, and since it is ordinarily his duty to take some precaution for his own safety when engaged in a hazardous occupation, contributory negligence is sometimes defined as a failure to use such care for his own safety as ordinarily prudent employees in similar circumstances would use. On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employee. The risk may be present, notwithstanding the exercise of all reasonable care on his part. Some employments are necessarily fraught with danger to the workman—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and

risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. When the employee does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment, without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arises out of the master's breach of duty. If, however, there be a promise of reparation, then during such time as may be reasonably required for its performance, or until the particular time specified for its performance, the employee relying upon the promise does not assume the risk unless at least the danger be so imminent that no ordinarily prudent man, under such circumstances, would rely upon such promise."

In *Carter* v. *Kansas City So. Ry. Co.*, 155 S. W. 638, the Supreme Court of Texas says: "Assumed risk is founded upon the knowledge of the employee, either actual or constructive, of the hazards to be encountered, and his consent to take the chance of injury therefrom. Contributory negligence implies misconduct, the doing of an imprudent act by the injured party, or his dereliction in failing to take proper precaution for his personal safety. The doctrine of assumed risk is founded upon contract, while contributory negligence is solely a matter of conduct."

Mr. Justice Riddick, speaking for the court in the thoroughly considered case of *Choctaw, Okla. & Gulf Ry. Co.* v. *Jones*, 77 Ark. 367, after defining the distinction between the defenses of assumption of risk and contributory negligence, said: "But, though the defenses of contributory negligence and assumed risk are separate and distinct, yet it frequently happens that they are both available in the same case and under the same state of facts. For instance, as we have stated, a servant assumes all the risks ordinarily incident to the service in which he is employed, and it is also true that he can not recover for an injury caused by his own negligence. Now,

it may turn out that the injury of which the servant complains was not only due to one of the ordinary risks which the servant assumed, but that it was also caused in part by his own negligence. In dealing with such a case it is, so far as results are concerned, immaterial whether it be disposed of by the courts on the ground of assumed risk or contributory negligence, for either of them make out a good defense. * * * If he (the servant) is injured by such negligence, he can not be said to have assumed the risk, in the absence of knowledge on his part that there was such a danger; for, as we have before stated, the doctrine of assumed risk rests on consent; but if the injury was caused in part by his own negligence, he may be guilty of contributory negligence. On the other hand, if he realizes the danger, and still elects to go ahead and expose himself to it, then, although he acts with the greatest care, he may, if injured, be held to have assumed the risk.''

The leading case of *Choctaw, Okla. & Gulf Ry. Co.* v. *Jones, supra,* defining the defenses of contributory negligence and assumption of risk, and showing the distinction between them, has been followed by this court in numerous cases. In the comparatively recent case of *A. L. Clark Lumber Co.* v. *Johns,* 98 Ark. 211, 217, we recognized the fact that, where the facts justified it, both the defenses of contributory negligence and assumed risk were alike available. In that case we said: ''Where the servant is aware of the defect, and the danger is so imminent and obvious that a person of ordinary prudence would not continue in the work, he not only assumes the risk, but is guilty of contributory negligence. This is where the doctrine of contributory negligence and of assumed risk approximate so that they are indistinguishable. * * *

''We do not mean to say that in all cases it is sufficient to give an instruction on contributory negligence, and that that includes assumption of risk. On the contrary, it may be said that a servant often is held to have assumed the risk of a danger, though he is not guilty of

contributory negligence, for, in the absence of a promise on the part of the master to repair a defect, if the servant is aware of the defect and appreciates the danger therefrom, he assumes the risk by proceeding with the work, even though to do so might not be an act of negligence on his part.''

Before the passage of the employers' liability act, in cases where, under the evidence, the defenses of contributory negligence and assumption of risk approximate so closely as to become indistinguishable, then it would not have been prejudicial error in any case for the court to have failed to draw the distinction between the two defenses, for the defendant's rights in such cases were fully protected if it got the benefit of either, for at that time either of these defenses was a complete defense, that is, barred recovery. But, since the passage of our employers' liability act, it does become all important for the court, in its instructions, to draw the distinction which is made by the statute, and to so frame its instructions to the jury as to allow the defendant the benefit of the defense of assumption of risk in any case where the evidence warrants it, even though the same evidence may justify an instruction on the defense of contributory negligence. For, as above stated, if the jury should find under the evidence that the employee was guilty of contributory negligence that would not be a complete defense, while a finding that he had assumed the risk under the same state of facts would be.

It is necessarily, therefore, prejudicial in any case where the evidence warrants it for the court to refuse to submit the defense of assumption of risk, even though it may have correctly instructed the jury on the defense of contributory negligence.

Now, under our employers' liability act, the injured employee does not assume the risk, and the master is liable for an injury caused by the negligence of the employer or of any of his agents, servants or employees. ''By virtue of the statute the negligent act of the fellow servant is, as far as the rights of the injured servant are

concerned, the same as if it was the negligent act of the master." *St. Louis S. W. Ry. Co.* v. *Burdg,* 93 Ark. 88.

Under the statute an injury caused by the negligence of the master or fellow servant is not one of the ordinary risks incident to the employment which the servant assumes when he enters the service of his employer. The effect of the statute was to make the negligent act of the individual servant the negligent act of the master. Except in the particulars named in the statute, the defense of assumption of risk remains the same as it was at the common law.

The statute was not intended to and does not deprive the employer of the right to set up the defense of assumption of risk by the injured employee where such injury was the result of the negligent acts of a fellow servant of which the injured employee had knowledge and the dangers of which he appreciated. Speaking to this point in *Western Coal & Mining Co.* v. *Corkille,* 96 Ark. 387, it was said by this court: "The rule is well settled that while a servant does not assume the unusual risks of the service and of which he is ignorant, he does by his contract of employment assume all the ordinary and usual risks of the service and the dangers incident thereto, and he assumes further all the risks which he knows to exist. If the danger arises from the negligent act of the master, and he becomes aware of such negligence, and has sufficient intelligence to know the effects of such negligence, then he assumes the danger arising therefrom." See, in addition to *Choctaw, Okla. & Gulf Rd. Co.* v. *Jones, supra,* and *Clark Lumber Co.* v. *Johns, supra,* and cases cited therein, *Graham* v. *Thrall,* 95 Ark. 560, and *St. L., I. M. & S. Ry. Co.* v. *Brogan,* 105 Ark. 533.

Now the court, in the above instruction, virtually told the jury that the appellee only assumed such dangers as were the usual and ordinary risks of the employment and such as were obvious, if any; that he would not assume the risk of dangers that were not ordinarily and usually incident to his employment, even though he had knowl-

edge of and appreciated the risk; that in the latter case he would be guilty of contributory negligence.

The evidence tended to prove that the wrapping of the pulley in the manner set forth in the statement created an unusual risk; but the evidence also tends to show that the appellee was present when the pulley was wrapped in this manner and assisted in bringing the belt around. He therefore had knowledge of the alleged acts of negligence which resulted in his injury, and it was for the jury to say, under all the circumstances, as to whether he understood and appreciated the danger. If the issue of assumed risk as to unusual or extraordinary dangers had been submitted under proper instructions there was testimony from which the jury might have found that the appellee assumed the risk. The failure therefore of the court to submit this issue was highly prejudicial to the rights of the appellant.

The court erred, under the evidence in the case, in telling the jury as matter of law that if the danger was not an ordinary and usual risk incident to the employment, and if appellee, knowing and appreciating the danger incident thereto, continued to work that he was guilty of contributory negligence. The court should have allowed the jury, under proper instructions, to say as to whether or not appellee, under such circumstances, was guilty of contributory negligence, or whether or not he assumed the risk. If appellee was guilty of contributory negligence, as we have already shown, the appellant would still be liable, but if he assumed the risk the appellant would not be liable.

Several other errors were assigned in the rulings of the court in the giving and refusing of instructions, but what we have already said, it is believed, will furnish the court a correct guide as to its charge on a new trial. We do not deem it, therefore, important to discuss the various other assignments of error. The court erred in so framing its charge as to deny appellant the defense of assumption of risk, in the manner above indicated, and for this

error the judgment must be reversed and the cause remanded for a new trial.