STEVENSON v. PHILLIPS.

4-3969

Opinion delivered October 14, 1935.

Brewer & Cracraft, for appellants.

A. M. Coates, for appellee.

HUMPHREYS, J. This suit was brought by appellee against appellants in the circuit court of Phillips County to compensate the estate of appellee's deceased husband for injuries received by falling from a ladder resting upon a pole that broke while he was attaching a wire thereto.

Appellants and their contractors, Terry & Quast, were engaged in levee construction along the Mississippi River near Helena, and their crews were running both day and night. The night work necessitated the maintenance of a light system. This system was extended as the work progressed. The poles used in the lighting system were cut from the banks of the river as needed. The posts were willow, twenty feet long and six inches in diameter at the butt end. When the line was extended, the posts were either taken up, carried forward, and reset, or else new ones were cut out of the willow brakes next to the river. The contractors, themselves, sometimes worked along with the men extending the line, and at other times it was extended by ordinary laborers, including the deceased. The deceased was a drainage engineer and drew a much larger salary than that of day laborers and performed many duties as the work progressed, including the extension of the electric light line. According to the weight of the testimony, he was the general foreman in charge of the work and in charge of extending the electric light line at the time he was injured, but there was some testimony tending to show that he worked as a co-employee with the other laborers engaged in the construction of the levee as well as the electric light line. On the afternoon of the accident, in January, 1933, the deceased, working for appellant, undertook to move the set-up for the night force to a new point, and, to assist him in the work, Terry & Quast, who

420

were equally interested in the lights being ready, sent two men to help him. One of these men set up a pole, and thereafter a ladder was set up against the pole which was held in place by two employees of Terry & Quast while deceased climbed the ladder to attach the wire. After he had ascended the ladder to about ten or twelve feet from the ground, the pole broke on account of being rotten, thereby turning the ladder in such a way as to cause deceased to fall to the ground on stumps, resulting in severe and painful injuries. He remained in a local hospital for a short time and afterwards moved to Franklin County, Georgia, and committed suicide in June, 1933, before he recovered from the injuries. The pole that broke was one that had been used on the job by deceased and others from thirty to sixty days for the erection of the electric light line, and was brought forward by one of the workmen and set in place by some of those engaged in the work.

The negligence alleged for recovery was a failure on the part of appellants to inspect the poles before using them in the construction of the electric light line.

Appellants filed an answer denying that any duty rested upon them to make an inspection of the poles before being used to ascertain whether they were defective. Other defenses were also interposed by appellants such as contributory negligence and assumption of the risk by the deceased.

Upon the conclusion of the testimony, appellants requested a directed verdict in their favor, which was refused, whereupon the court submitted the questions involved to the jury, which resulted in a verdict and consequent judgment for $2,500 against appellants, from which is this appeal. According to the undisputed evidence, the poles were simple appliances, being only six inches in diameter at the butt and twenty feet long, which could be carried by one man and which were cut when needed as the work progressed from the willow brakes by the ordinary laborers engaged in the work. No separate system of inspection of these poles was employed so that the laborers might rely thereon in using them. The deceased was a drainage engineer familiar with the work

in which he was engaged and with the character and kind of poles being used, and, to say the least of it, had knowledge equal to his employers concerning them and the use to which they were being put. Considering the character and kind of poles and the purpose for which they were being used, no legal duty rested upon appellants to make a separate inspection of each pole before being used to ascertain whether it was safe to set and use it. It was such a simple appliance that any ordinary laborer might determine for himself, in the exercise of ordinary care for his own safety, whether it was fit to use.

This court said in the case of *McEachin* v. *Yarborough,* 189 Ark. 434: "It is a fundamental rule in the law of negligence that liability exists when the perils of the employment are known to the employer, but not to the employee, and no liability is incurred when the employee's knowledge equals or surpasses that of the employer." Citing 18 R. C. L., p. 548, and *Arkansas Smokeless Coal Company* v. *Pippins,* 92 Ark. 138, 122 S. W. 113, 19 Ann. Cas. 861.

The rule announced in the McEachin case, *supra,* is applicable in the instant case, for certainly it can be said that, according to the undisputed evidence, appellants had no superior knowledge to that of the deceased as to the kind of pole being used and the purpose for which being used and the condition in which it was at the time. The deceased knew no system of inspection of these poles was in use upon which he had a right to rely. As stated above, the pole was a simple appliance, and it was easy for deceased to have examined same with reference to its condition and safety and, under the circumstances, he should have done so. The court erred in not peremptorily instructing a verdict for appellants; hence the judgment is reversed, and the cause is dismissed.