LEE *v.* PATE.

4-5551                                     131 S. W. 2d 8

Opinion delivered July 10, 1939.

---

*Arthur L. Adams,* for appellant.

*Denver L. Dudley,* for appellee.

BAKER, J. The plaintiff, J. C. Pate, sued defendant, J. W. N. Lee, for damages for certain alleged personal injuries and recovered a judgment for $600. The defendant has appealed.

The defendant presents only two propositions urged for reversal: (1) the lack of substantial evidence to support the verdict and consequent judgment; (2) error on account of plaintiff's alleged intentional injection into the case the fact that appellant had liability insurance.

For the reason that it would unduly extend this opinion to quote from the evidence, we state the facts and conclusions therefrom with every inference to sustain the verdict.

Appellant Lee, as contractor, was constructing a building on the campus of the State A. & M. College, at Jonesboro. Appellee Pate and John Wimpy were employed on the job as steel tiers. These two worked together, neither having any control over the other. Their immediate superior was Jim Reese, who probably gave them directions as to what particular forms were required as the work progressed. They needed no advice or instruction in the manner of the performance of their duties. Both were experienced. Pate had been doing the same kind, or similar work since 1920. He had been

working on this particular job about two and one-half months when he was hurt.

He and Wimpy were engaged in making spirals and other forms from steel reinforcing rods 3/4″ to 7/8″ in diameter, about 13½ feet long. Some of the forms required five rods, some seven, and others perhaps more. The spirals were used at corners and square forms were used as pillars to support walls. These steel rods were joined or tied together by "hooks," as Pate described the means of fastening one to another. At all events these rods were so joined by steel connecting pieces as to hold them in the shape desired for corners and pillars and were so placed in the building process as to reinforce the concrete mixture to be poured around them. Sometimes shorter rods, two or three feet long, were used by these men as tools to aid in shaping the forms, and even shorter pieces, perhaps 20 to 24 inches long, were used to hammer or drive the steel connecting links or "hooks" to the desired place in the form. None of these shorter pieces appears to have been in use on the date Pate was injured, but they were somewhere on the grounds.

On the day and at the time the injury complained. of occurred two or three forms had been built at a new location and each had been rolled off or moved off the sawhorses or trestles at the side thereof, and the space immediately adjacent to the trestles was filled when the last of these steel forms made that day was finished. These men had placed the trestles in a driveway, or road, because it was dry there, as was stated by Wimpy. To open this roadway the spiral just finished had to be moved and the trestles also had to be taken from the road. In moving the spiral Pate took the front end and walked "backwards and sideways", as he described his movements. They proceeded to a gravel pile, upon which they placed the spiral. About the time they had reached the place where they intended to lay down this steel form, Pate stepped upon one of the short rods. He thinks it was not the one offered as an exhibit, but was like it, except the one he stepped on was not rusty, but bright. It rolled forward under his foot, causing him to fall. The

steel form he was helping to carry fell upon him, causing the injury. Wimpy did not support this statement of Pate's, but, since the verdict of the jury forecloses dispute, we treat this statement as true. Since the evidences disclosed that Pate was at the front end of this form, the bottom of which was about eight inches from the ground, we think it probable that Pate, in falling, involuntarily raised the form, as his foot and the lower part of his body were carried forward by the rolling rod. Pate could not explain why this rod was at that point, except it was "throwed down by somebody." "I can't see the idea of the rod being there without somebody picked it up and throwed it there."

The evidence showed that Pate and Wimpy worked northwest of the building under construction, southeast of it, and north of the building, moving from place to place when they pleased, and probably as required for materials, and maybe, because of the necessity of having the finished forms near places they were to be used. They were then producing building forms for use on the fourth story. They were working then, just the two of them together, without any superior or immediate overseer to advise or control the manner of the performance of their duties. They formed a complete working unit, not connected with about forty other workers, and were required only to have the forms ready when needed.

Now, what was the negligence relied upon to sustain the action or support the verdict and judgment?

A failure to use ordinary care to furnish a reasonably safe place to work.

Appellant insists that there is not only no evidence to sustain the charge of negligence, but that appellee's own testimony discloses a case of assumption of risks and also contributory negligence.

We consider the foregoing facts in the light of numerous authorities which announce long settled principles of law, controlling in similar situations.

The servant assumes ordinary risks and dangers, including those hazards known to him and those which are

open and obvious. He is not required to make inspections. *Asher* v. *Byrnes & McCauley,* 101 Ark. 197, 141 S. W. 1176. *Temple Cotton Oil Co.* v. *Skinner,* 176 Ark. 17, 2 S. W. 2d 676; *International Harvester Co.* v. *Hawkins,* 180 Ark. 1056, 24 S. W. 2d 340.

The foregoing authorities furnish illustrative tests of that class of cases in which there is no breach of legal duty, hence no negligence, as well as another class of cases in which there may be dangers from which injuries are suffered by a servant without liability on the part of the master, where they are ordinary risks and hazards which the servant assumes by his contract of employment.

In the case at bar there is no negligence established by any of the foregoing facts, admittedly true for the purposes of this appeal. There was upon the ground a steel rod upon which the appellee stepped. It rolled under his foot causing the injury. There is no evidence that Lee, the master, or Jim Reese, the foreman, placed the rod where the appellee stepped upon it, or that either had ever seen it there, or that it was at a place or location where it might reasonably have been anticipated that Pate or any other servant would step upon it, under such circumstances as Pate indicated caused him to fall and hurt himself. Pate says that it seems to have been "throwed to that place." Assuming there was something to indicate that fact to his mind, there is no evidence that it had been at that place for such a length of time that it might have been observed by any kind of ordinary inspection. If its location made that place one of danger, the evidence is wholly lacking to show any breach of duty on the part of Lee or any one acting in his place or stead. In truth, the only evidence that this particular rod, or piece of steel, or a similar one, had been handled, thrown or placed where Pate stepped upon it, is the evidence that Pate and Wimpy were the only employees handling or using such rods of steel.

We have already called attention to the fact that they moved about from place to place, as the building progressed, or, as they said, on the last occasion to get to a dry place in the road. They made their own place of

work and moved away from it, at least, sixteen feet, at the time Pate was injured, to place the form or spiral upon the gravel bank, and, since that is the place where Pate fell, it is also the location fixed by him as the one where he stepped upon the piece of rolling steel.

Authorities are without limit almost that under such circumstances wherein the parties choose their own place to work, the rule requiring the master to exercise ordinary care to furnish a reasonably safe place to work does not prevail. *Arkansas Cotton Oil Co.* v. *Carr*, 89 Ark. 50, 115 S. W. 925.

One of our recent cases upon this proposition, and it is controlling here, is *M. E. Gillioz, Inc.*, v. *Lancaster*, 195 Ark. 688, 113 S. W. 2d 709. The cited case is determinative of the issue of negligence presented for our consideration here.

A still more recent case is *St. L.-S. F. Ry. Co.* v. *Ward*, 197 Ark. 520, 124 S. W. 2d 975.

We have already shown that no proof was offered tending to show any breach of duty owing by appellant to appellee, and consequently no negligence, as there is no presumption of negligence arising out of the mere fact that a bar of steel was found upon the grounds where a building was under construction, and structural steel to be used therein, and other building materials and supplies were scattered about or piled in close proximity to the building under construction.

But the appellee is confronted with another condition or situation which would prevent recovery in the instant case. He does not plead, nor does he insist that there was any latent or hidden danger. The only danger he insists upon is that there was a rod of steel placed where perhaps it should not have been. It was as open to his observation as it was to appellant's. If we should consider that it was in the road where he now argues it was, though the evidence shows that it was upon the gravel pile, it would have been the more easily observed in the open driveway than on the pile of gravel. He may not excuse himself for failing to see what was clearly

observable. Had he looked before he started to walk backwards, he could not have failed to see what he said was a bright and shiny rod of structural steel, twenty inches long. In that regard the rights of the parties are fixed and determined by the announcement made by this court in the case of *McEachin* v. *Yarborough,* 189 Ark. 434, 74 S. W. 2d 228. See *Missouri Pacific Rd. Co.* v. *Vinson,* 196 Ark. 500, 118 S. W. 2d 672.

Without burdening our comments with unnecessary citation, we shall content ourselves with the mention of *Caddo River Lbr. Co.* v. *Henderson,* 194 Ark. 724, 109 S. W. 425, wherein was cited the case of *Missouri P. Rd. Co.* v. *Martin,* 186 Ark. 1101, 57 S. W. 2d 1047, and from which last mentioned case we quoted in announcing the rule as to the degree of care required in furnishing an employee a reasonably safe place to work.

Having reached the conclusion stated, the second alleged error is not important.

From the foregoing it appears that the court erred in not directing a verdict for the appellant. The case has been fully developed and shows no matter of merit that might be presented upon a new trial.

The judgment is, therefore, reversed and the action dismissed.