HALL *v.* PATTERSON.

4-6916                                    166 S. W. 2d 667

Opinion delivered December 21, 1942.

*Claude B. Brinton* and *Bon McCourtney,* for appellant.

*Cockrill, Armistead & Rector,* for appellee.

GREENHAW, J. In his complaint against appellee and The Texas Company, appellant alleged that the defendants were engaged in the distribution of gasoline and oil products, owning a plant at Hardy in Sharp county, Arkansas, and that appellee, Patterson, was the agent and employee of the Texas Company and in control of said plant; that in August, 1939, Patterson, acting in his individual capacity and as agent for The Texas Company, employed appellant to paint certain tanks and a warehouse; that while engaged in such work on August 18, 1939, he sustained serious personal injuries, the result of a fall due to the breaking of a defective rope used in connection with a block and tackle equipment, by means of which he elevated himself from the ground in order to paint the outside of the tanks; that the sole and proximate cause of his injury was the negligence of the defendants in failing to provide him a safe place

to work and safe tools and equipment with which to work.

Appellee answered denying each allegation of the complaint, and stated that he was not the agent and employee of The Texas Company, and there was no relationship existing between him and The Texas Company at the time of the alleged accident, insofar as the work being done by appellant was concerned; that appellant was neither an employee of appellee nor of The Texas Company; that if appellant was injured it was the result of his own negligence or the result of a risk which he assumed. Appellee further alleged that he had contracted with the Norman Lumber Company of Hardy, Arkansas, to do certain work for him on the property in question; that the lumber company was an independent contractor, and it was his understanding that appellant contracted with the Norman Lumber Company to do the work he was engaged in at the time of the alleged accident; that he had nothing to do with the employment of appellant and was not responsible for the injuries complained of.

The Texas Company also filed an answer.

Appellant called appellee, Patterson, as his first witness, and, at the conclusion of his testimony, took a voluntary nonsuit against The Texas Company. The trial then proceeded with appellee as the sole defendant. At the conclusion of the evidence on behalf of appellant the court directed a verdict for Patterson, which resulted in this appeal.

In his motion for a new trial, in addition to the usual grounds, appellant assigned as error the action of the court (a) in directing a verdict for Patterson, and (b) in refusing to permit counsel for appellant to ask the jurors, when they were being interrogated as to their qualifications, whether they were employed by or had any connection with any liability insurance company.

Appellee Patterson, called on behalf of appellant, testified that he lived at Jonesboro and owned the warehouse and tanks at Hardy on which appellant was work-

ing when he fell. He contracted with Mr. Norman of the Norman Lumber Company at Hardy for the painting of these structures, his contract with Norman being in writing. He never at any time had any dealings with appellant in connection with the painting job. He did not direct appellant and was not there when the work was going on.

After he entered into a contract with Norman for the painting of the tanks and other property, it was Norman's duty to have the work done. Norman did not tell him who would do the painting or that he had talked with appellant about doing it.

Appellee further testified that Archie Gregory was his employee and was sent to Hardy to construct the bases for the tanks and do electrical work, but he was not in charge of the work of erecting the tanks. Gregory did not pay the men and did not, to his knowledge, give orders to the men.

Appellant, Hall, testified that he was 48 years of age, was reared at Hardy, had been a painter and paper hanger for 30 years, and had followed this occupation in many places and in different states. He heard that Mr. Norman was doing this job and went to see him to get the painting job if possible. Norman informed him that he was furnishing the paint, but had nothing to do with the painting. Patterson hired him on August 15, and he was injured on August 18, 1939. Patterson said Gregory was in charge of the work and he would take orders from Gregory. Patterson was there each day while he was working and so was Gregory. He was using a ladder when Gregory told him he could not do it that way, as the ladder was scraping the paint and he would have to use a "block and fall." Gregory brought the block and fall and ropes to him, and he started to use them.

He attached the apparatus and observed the condition of the ropes. He made tests of these ropes— tightened up on them and they did not break. He then took his seat and raised himself up, and the rope at-

tached to the seat broke, causing his fall and resulting injuries. He had worked on "swinging stages" before, and in this instance had done the same things in getting the "swinging stage" ready and getting on it that he had always done.

On cross-examination appellant testified he attached the block and tackle equipment to the tank, tied to the seat the rope which broke, and tested the ropes as painters usually do to see if they were proper ropes and of sufficient strength to hold him up, and they appeared all right and safe to use. They sustained his weight when he tested them, and he was satisfied with the sufficiency of the ropes.

"Q. You made an inspection of this block and tackle and the rope and this particular piece of rope before you used them? A. Yes, sir. . . I made the test before I pulled myself up and then Mr. Hammond handed me this bucket and I started to pull myself up. Q. What test did you make of the rope? A. I made all the tests that were necessary. Q. What tests was there that could have been made by Archie Gregory that you did not make? A. There is a lot of things you can do to make a test. I made all the tests that I thought necessary. I tightened the rope up and pulled on it, got on the seat board and jostled it up and down with my weight on it and it did not break. Q. There was nothing about this rope to indicate that it was not suitable for use for which it was furnished to you or not of sufficient strength? A. No, sir. Q. You could see nothing wrong with it and it stood up under your tests of it? A. Yes, sir. Q. And you are a man of 30 years' experience in painting and in the use of this type of equipment—you had used this same type of equipment before? A. Yes, sir. Q. What other tests could have been made of this rope that were not made by you before you started to use it? A. There were other tests that could have been made, but I made all the tests that were necessary. Q. You made such inspection and tests as Archie Gregory could have made and were satisfied with the sufficiency of the rope? A. Yes, sir. . . . Q. You knew that Archie Gregory was not

a painter? A. Yes, sir. After talking to him I could tell he knew nothing about it.''

The undisputed evidence further shows that. the block and tackle equipment used in this work belonged to O. W. King and was borrowed from King; that appellant knew where King lived and went with Gregory to show him the place.

There was other evidence tending to establish and refute the contention that the relationship of master and servant existed between appellee and appellant. To further set out or refer to the testimony on this point would unduly extend this opinion and we deem it unnecessary in view of the conclusion we have reached.

Counsel for appellant contend that he was under no obligation to examine and test the ropes and equipment and had the legal right to rely on the presumption that appellee had used ordinary care to furnish him reasonably safe equipment with which to perform his work; that he did not do so and having negligently failed to perform this duty, he is liable for the injuries appellant received due to the breaking of one of the ropes he was using.

While appellee contends that. appellant was not his employee, he insists that even if it should be held that this was a question of fact for the determinination of the jury, still he is not responsible for appellant's injuries for the reason that the uncontradicted testimony shows that appellant assumed the risk of his employment.

The important question for determination, therefore, is, did the court err in directing a verdict for appellee.

Appellant testified that he arranged and tested the apparatus with which he was working; that he submitted the rope to every test that was necessary and found out as much about the strength of the rope as Gregory could, had he made the tests. He pulled on the rope, got in the seat and ''jostled it up and down,'' to determine the strength of the rope.

He was a painter of many years' experience and had often employed the block and tackle in painting structures, using the same kind of equipment, and made the same tests here that painters usually make. There was nothing about the rope that indicated it was not suitable for this work. There was no evidence that his eyesight was in any wise impaired. He could not see any defect in it, and it stood up under his tests. Appellant was fully familiar with this kind of equipment, and made his own attachment thereof, installed and tied the rope which broke and had full control of the installation and operation of the equipment.

In the case of *Harmon v. Morrison*, 201 Ark. 820, 147 S. W. 2d 35, this court said: "It is unquestionably the duty of the master to exercise reasonable care to furnish the servant a reasonably safe place in which to work. The law does not require that he furnish the servant a safe place or safe appliances, but it does require that he exercise ordinary care to make the place where the servant works reasonably safe and to furnish reasonably safe appliances with which to work. . . . and no presumption of negligence arises from the mere happening of the accident which caused the injury. While the duty is upon the master to exercise ordinary care, the presumption is that he has exercised such care, and in the absence of evidence showing failure to exercise such care, the presumption is that the master performed his duty."

In the case of *Rice and Holman v. Henderson*, 183 Ark. 355, 35 S. W. 2d 1016 this court used the following language: "This court has many times held that, in order for a servant to recover because of the failure of the master to furnish him with safe appliances or a safe place to work, the burden is upon the complaining party to establish the fact that the appliances or place was unsafe, and also that the master either had notice of the unsafe condition or could, by the exercise of ordinary care, have known of the defect."

This court has repeatedly held that the master is not an insurer of the safety of the servant, and it is the duty of the servant to exercise ordinary care for his own pro-

tection. Also that "the servant assumes ordinary risks and dangers, including those hazards known to him and those which are open and obvious." *Lee* v. *Pate,* 198 Ark. 723, 131 S. W. 2d 8.

"The test of a master's duty in furnishing appliances and a place to work is what a reasonably prudent person would have ordinarily done in such a situation." *St. Louis, I. M. & S. Ry. Co.* v. *Copeland,* 113 Ark. 60, 167 S. W. 71.

In the case of *McEachin* v. *Yarborough,* 189 Ark. 434, 74 S. W. 2d 228, it was said: "It is a fundamental rule in the law of negligence that liability exists when the perils of the employment are known to the employer but not to the employee, and no liability is incurred when the employee's knowledge equals or surpasses that of the employer."

This rule was cited with approval in the case of *Stevenson* v. *Phillips,* 191 Ark. 418, 86 S. W. 2d 422, where this court said: "The rule announced in the Mc-Eachin case, *supra,* is applicable in the instant case, for certainly it can be said that according to the undisputed evidence, appellants had no superior knowledge to that of the deceased as to the kind of pole being used and the purpose for which it was being used and the condition in which it was at the time. The deceased knew no system of inspection of these poles was in use upon which he had a right to rely."

In connection with the rule as to liability for latent defects, this court in the case of *International Harvester Co. of America* v. *Hawkins,* 180 Ark. 1056, 24 S. W. 2d 340, said: "The correct rule is that the master is not responsible for latent defects that are not open to observation in the exercise of ordinary care, or that would not be discovered by a proper inspection." See, also, *Export Cooperage Company* v. *Ramsey,* 133 Ark. 336, 202 S. W. 468.

Conceding that appellant's contention as to the law would be correct under certain circumstances, it has no application here for the obvious reason that according

18

to his own testimony he did not rely upon the presumption that appellee had discharged his duty of using ordinary care in furnishing him reasonably safe ropes with which to work. He knew Gregory was not a painter and knew nothing about painting. He relied upon his own ability and judgment. There was no evidence that Gregory or appellee or anyone told him to use them after he had personally examined and tested them. Under the undisputed evidence, we think his ability to test and examine the equipment to determine its safety and his knowledge thereof was superior to that of appellee or Gregory, whom he contends was the foreman.

Of course the rope, which appellant attached to the board upon which he was sitting, broke, but he had previously looked it over, tested it and said he could not see anything wrong with it. He made these tests and examinations, realizing the hazards in this kind of work if the ropes were of insufficient strength. He also knew they did not belong to appellee, but were borrowed from King. If the weakened and dangerous condition of the rope was apparent to appellant and he proceeded to use it without complaint, he assumed the risk of injury incident to its use.

Moreover, if there was a latent defect in the rope which was not discoverable by a careful inspection thereof by appellant, a man of many years experience in the use of this kind of equipment who said he examined it and made every test that painters usually make and every test that was necessary, then, under the decisions of this court, it cannot be said that the latent defect was discoverable by appellee had he made a careful examination thereof, or that this was a question of fact for the determination of a jury. On the other hand, we think the evidence conclusively shows that the defect was not discoverable through a careful examination by a person of ordinary prudence and judgment.

The law did not require that the rope be examined by a rope expert. The careful tests and examinations which appellant made to determine its strength and sufficiency failed to reveal any weakness or defects. If it

were not discoverable by him, certainly it would not have been discoverable by appellee or Gregory, neither of whom was shown to have expert or superior knowledge of the structure of ropes or the use thereof on a block and tackle equipment. We have concluded therefore, that appellant, by his own examination and tests of the equipment, waived the right to rely upon the presumption that the master had used ordinary care to furnish him safe equipment with which to perform his work.

In the case of *Sheldon Handle Co.* v. *Williams*, 122 Ark. 552, 184 S. W. 43, this court said: "The case falls, we think within the principle announced by decisions of this and other courts to the effect that where the duty is delegated to the servant himself of making his own working place and appliances safe, or to determine the sufficiency of the appliances or material which he was to use, then he assumes the risk of any danger arising from the use of such working place, appliances or material."

Regardless of whether this duty was in fact delegated to appellant in the instant case, he apparently thought it was and proceeded to examine and test the equipment for his own protection. Hence his fall was the result of an assumed risk and the appellee was not responsible for his resulting injuries.

Inasmuch as the facts in connection with appellant's examination and use of the equipment were undisputed, we think there was nothing about which reasonable minds would differ, and there was nothing to submit to the jury. *Marcum* v. *Three States Lumber Co.*, 88 Ark. 28, 43 S. W. 357.

Since there was no actionable negligence shown, the court properly directed a verdict for appellee, and in view of this holding, it is unnecessary to determine whether appellant was employed by appellee or an independent contractor, and whether the court erred in connection with the examination of the jurors as to their interest in or connection with liability insurance companies.

Affirmed.