PINCHBACK PLANTING COMPANY *v.* CLOUD.

5-1338                                    305 S. W. 2d 552

Opinion delivered October 7, 1957.

*Williamson & Williamson, William K. Ball,* and *Thomas S. Lovett, Jr.,* for appellant.

*Bridges & Young,* for appellee.

ED. F. McFADDIN, Associate Justice. This is an action for damages brought by appellee Cloud, against his former employer, Pinchback Planting Company. Cloud claimed that he received a back injury because of the negligence of a fellow employee named Biggs. Trial to a jury resulted in a judgment for Cloud[1]; and the defendant prosecutes this appeal. The sole question, here, is whether the trial court committed error in refusing to direct a verdict for the defendant. In considering that question we necessarily view the evidence in the light most favorable to the plaintiff. *Life & Casualty Ins. Co. of Tennessee* v. *Kinney,* 206 Ark. 804, 177 S. W. 2d 768; *Rexer* v. *Carter,* 208 Ark. 342, 186 S. W. 2d 147; and *Ark. P. & L. Co.* v. *Connelly,* 185 Ark. 693, 49 S. W. 2d 387.

The appellant, Pinchback Planting Company (hereinafter called "Pinchback"), is a corporation, owning and cultivating several thousand acres in Lincoln County. George B. Ryland is the president and general manager of the corporation; and appellee, Hollye J. Cloud (hereinafter called "Cloud"), was, at the time of receiving his injuries, the farm manager of the corporation. Pinchback had constructed a levee around a reservoir so as to impound water for use in the dry seasons, and had purchased an electric motor to pump the water from a canal into the reservoir. In the course of installation it was necessary to carry the electric motor up to the top of the levee and then place the motor on a pump stand. While engaged in carrying the motor, Cloud received his injuries, the nature and extent of which are not questioned on this appeal.

Pinchback regularly employed approximately twenty farm laborers; and it was the duty of appellee Cloud, as farm manager, to designate and direct the work of these laborers. Twice a day (in the morning and after

---

[1] The Workmen's Compensation Law was not mentioned by either side. See § 81-1302 (c) (1) Ark. Stats.

the noon meal) the laborers met, and Cloud assigned the work. He frequently counselled with Ryland and took general orders from him; but Cloud was the farm manager in charge of the laborers, and Ryland looked after the purchases, sales, and policy matters. When Ryland said that the electric motor was to be installed, Cloud asked how it should be done; and Ryland told him that he was free to do it as he desired, but that at one time Ryland had installed his own motor by having three or four men carry it to the desired location.

On the afternoon of March 30, 1954, Cloud selected four workmen from the group of twenty available: he could have selected more if he desired. He had the motor placed in a truck, and he and the four selected workmen proceeded to a place close to the levee. These four workmen were Shinn, Biggs, Murry and Humphrey. When they reached the levee, they removed the electric motor from the vehicle in order to carry the motor to the top of the levee. The electric motor weighed somewhat in excess of 400 pounds and was cylindrical in shape, being about two feet in diameter and four feet in length. A chain was placed around each end of the motor and then an iron or wooden bar passed through each chain: so that a man was on each end of the front bar and likewise a man at each end of the rear bar. Shinn and Biggs had the front bar, and Humphrey and Murry had the rear bar.

Carrying the electric motor up the levee was difficult because the dirt was soft and slippery. The men slipped and had to put the motor down several times before they reached the top of the levee. When about a third of the way up the levee, Shinn professed inability to carry his load. Thereupon Cloud, even though the farm superintendent, took Shinn's place in carrying the load; and the group finally, after much slipping, reached the top of the levee. They were carrying the electric motor about two feet above the ground; and Cloud decided that they needed to reverse ends before resting the burden on the top of the levee. We now quote Cloud's testimony, as it is vital to the determination of the issue before us:

"After we turned the motor around so that the end that I wanted to go in first was facing the ramp, I said, 'let's sit it down,' and I looked, I glanced back to see when this motor, the part that was back of me, had or was coming about to the point where I wanted to sit it down, and as I looked back and it got about to the point I said, 'Okay, sit it down.' And we started down with it and the chain on the pipe jumped three, four or five inches, enough just to jerk me down.

"Q. Jumped which way?

"A. Towards me — shifting the weight on to me, and the weight shifting and the sudden jerk, jerked me down; I looked over, — I caught on the motor when I went down and I noticed Biggs was still standing. He had got kinda on the end of his pipe and was still holding it and he hadn't let down. He was on the opposite end of the pipe from me, but he was on the end of his pipe instead of having it like you usually carry a handstick, he had the end of his pipe up against him holding it."

From the foregoing, it can be seen that Cloud testified that Biggs was negligent in failing to lower his end of the bar when so directed and that this negligence resulted in the injury to Cloud[2]. Although there is only one issue on appeal — i. e., the sufficiency of the evidence to take the case to the jury — nevertheless, the appellant argues the case under five headings[3]. We discuss the case under the appellant's topic headings.

I. *Appellant says*: *"Appellee's Injury Was The Result Of A Pure Accident."* Under this heading appellant points out that at one place in Cloud's testimony he used the word "accident"; and appellant, in arguing that there is no liability for an accident, cites and dis-

---

[2] Appellant claims that appellee in his discovery deposition testified differently from the quoted testimony; but, as previously stated, in testing the sufficiency of the evidence to take the case to the jury, we must give the plaintiff's testimony its strongest probative force.

[3] Appellant also has a sixth heading, being, "Value of Prior Statements as Substantive Proof"; but such discussion is merely a precautionary postscript, relating to inconsistencies between testimony and previously given declarations or written statements.

cusses, *inter alia,* such cases as *St. L. S. F. Ry. Co.* v. *Ward,* 197 Ark. 520, 124 S. W. 2d 975; *St. L. S. F. Ry. Co.* v. *Burns,* 186 Ark. 921, 56 S. W. 2d 1027; and *Mo. Pac. Ry. Co.* v. *Medlock,* 183 Ark. 955, 39 S. W. 2d 518. The word "accident" is sometimes used in the sense of "mishap" or "casualty," and does not have the meaning that we ascribe to the word in negligence cases. It was certainly used in the everyday parlance sense by Cloud in his testimony. In negligence cases, an "accident" is an event that occurs without the negligence of any person[4], which is an entirely different conception from the every-day parlance. Here, Cloud testified that Biggs negligently failed to lower his end of the bar on command. Whether Biggs did so fail, and whether such failure was negligence, under the facts and circumstances, were necessarily matters for the jury. So, we hold against appellant on this topic heading.

II. *Appellant says:* "*Appellee Proved No Negligence.*" Under this topic heading, appellant cites, *inter alia, Kurn* v. *Faubus,* 191 Ark. 232, 84 S. W. 2d 602; *Vincennes Steel Corp.* v. *Derryberry,* 194 Ark. 37, 106 S. W. 2d 571; *Kroger Grocery & Baking Co.* v. *Taylor,* 203 Ark. 154, 157 S. W. 2d 5; and *Hall* v. *Patterson,* 205 Ark. 10, 166 S. W. 2d 667. The sole act of negligence alleged by appellee — and supported by his testimony as previously quoted — was:

"The motor was turned into the proper position and plaintiff gave a signal to set it down. Upon this signal, Humphrey and Murry and plaintiff all lowered their ends of the pipes to put the motor down. Lois Biggs, who was carrying the other end of the pipe directly across from plaintiff, failed to lower his end of the pipe and this caused the motor to slide toward the plaintiff and a large portion of the weight of the motor was thereby suddenly shifted to plaintiff, causing his back to be injured as hereinafter set forth."

Appellant argues that, even though appellee's testimony be given its full force and effect, still there is no

---

[4] See *Walloch* v. *Heiden,* 180 Ark. 844, 22 S. W. 2d 1020. See also the word "accident" in Black's Law Dictionary.

evidence that Biggs heard appellee say to "set it down." This, of course, was a fact question. Appellee said that he gave such order, and Murry and Humphrey both obeyed such order; so it was a question of fact as to whether Biggs heard the order and failed to obey it. Just as we previously said, the question of negligence was a matter for the jury; so we hold against appellant on this second topic heading.

III. *Appellant says*: "*Appellee's Accident Was Unforeseeable.*" Appellant claims that no defendant can be held liable for the result of any act or omission, the result of which could not have been reasonably foreseen, anticipated and prevented, citing such cases, *inter alia*, as *Presley* v. *Actus Coal Co.,* 172 Ark. 498, 289 S. W. 474; *Pekin Stave & Mfg. Co.* v. *Ramey,* 108 Ark. 483, 158 S. W. 156; and *Batson* v. *Smith,* 196 Ark. 386, 117 S. W. 2d 731. But, the question of negligence in the failure of Biggs to hear the command and to lower his end of the bar — resulting in shifting the weight load — was a fact question to be settled by the jury; and all of appellant's argument on this point is directed against the facts. So we hold against appellant on this third topic heading.

IV. *Appellant says*: "*Appellee And Biggs Were Not Fellow Servants.*" Appellant points out that Cloud was the farm superintendent and Biggs a mere laborer selected by appellee to do a laborer's job; that the relationship of fellow servant did not exist between them; and that appellant cannot be held liable to appellee for the negligence, if any, of Biggs. Appellant cites and most strongly relies on the case of *Kroger Grocery & Baking Co.* v. *Taylor,* 203 Ark. 154, 157 S. W. 2d 5. In the cited case, Taylor was the manager of the Kroger store in Sheridan. Some tubs were hanging on the wall, and in order to reach them it was necessary to stand on a box. Kroger had supplied a big heavy box for the purpose; but when Taylor tried to reach one of the tubs, as requested by a store employee named Berry, Berry substituted a thin apple crate in place of the strong box, and when Taylor was on the apple crate, it gave way. There is a statement in the opinion which says: "The fair interpreta-

tion of appellee's own testimony is, that he was the general manager of the store and not a fellow servant of George Berry.'' Even though the opinion recites that Kroger was a corporation, nevertheless the Court erroneously applied the old fellow servant rule[5] that had been abolished as to corporations. We cannot now sanction the case of *Kroger Grocery & Baking Co.* v. *Taylor* as repealing our statute, which is § 81-1201 Ark. Stats., and which provides in part:

"Every corporation, . . . shall be liable in damages to *any person suffering injury* while he is employed by such corporation, . . . for such injury . . . resulting in whole or in part from negligence of such corporation or from the negligence *of any of the officers, agents or employees* of such corporation.'' (Italics our own.)

We have repeatedly held that under similar statutes, the distinctions between vice principals and fellow servants have been eliminated. See *St. L. I. M. & So. R. Co.* v. *Cobb,* 126 Ark. 225, 190 S. W. 107; *St. L. S. F. Ry. Co.* v. *Miller,* 173 Ark. 597, 292 S. W. 986; and *Dicken* v. *Mo. Pac. RR. Co.,* 188 Ark. 1035, 69 S. W. 2d 277. So, we hold against appellant on this fourth topic heading.

V. *Appellant says: "Appellee Voluntarily Assumed The Risk Of Injury."* Under this assignment, appellant cites and relies on such cases as *Kurn* v. *Faubus,* 191 Ark. 232, 84 S. W. 2d 602; *Mo. Pac. RR. Co.* v. *Vinson,* 196 Ark. 500, 118 S. W. 2d 672; and *Hall* v. *Patterson,* 205 Ark. 10, 166 S. W. 2d 667. Appellant urges that when Shinn professed his inability to carry the load, appellee voluntarily stepped in Shinn's place and thereby assumed the risk of doing the work; that appellee must have known his own strength; and that the employer is not liable when the employee's knowledge equals or surpasses that of the employer. All these statements are good law; but, they do not explain how appellee could have assumed — as a matter of law — the risk of Biggs failing to hear and respond to

---

[5] For application of the old fellow servant rule see *Howell* v. *Harvill,* 185 Ark. 977, 50 S. W. 2d 597.

a command to lower the burden. This is not a case where a man undertook to carry a load and knew his own strength and the load was too great for him: this is a case wherein a man undertook to work with others. It was a fact question as to whether Cloud had any reason to believe that Biggs would fail to hear and obey a command to lower the burden. The servant assumes the risk of which he is aware, or should be aware with the exercise of reasonable diligence; but we have repeatedly held, in cases like this one, that ". . . the servant does not assume the risk of injury from the negligence of his fellow servants, which was unknown to him, and the danger of which he could not appreciate, . . ." *Sun Oil Co.* v. *Hedge,* 173 Ark. 729, 293 S. W. 9; *C. R. I. & P. Ry. Co.* v. *Daniel,* 169 Ark. 23, 283 S. W. 15; *Bruce* v. *Yax,* 135 Ark. 480, 199 S. W. 535. It was, therefore, a fact question for the jury as to whether appellee assumed the risk in this case. We find no merit in appellant's fifth topic heading.

## *Conclusion.*

Considering the whole case, we find a question of fact was made for the jury; and that is the only point for consideration on this appeal.

Affirmed.