228

Matt PHILLIPS, Plaintiff,

v.

MORTON FROZEN FOODS, Division of ITT Continental Baking Company, Inc., Defendant.

No. LR–69–C–230.

United States District Court,
E. D. Arkansas, W. D.

April 27, 1970.

Supplemental Opinion May 25, 1970.

H. Clay Robinson, of Pearce, Robinson, McCord & Maurras, Ft. Smith, Ark., for plaintiff.

Robert S. Lindsey, of Wright, Lindsey & Jennings, Little Rock, Ark., for defendant.

S. Hubert Mayes, Little Rock, Ark., for intervenor.

## OPINION

JOHN E. MILLER, Senior District Judge (Sitting by Designation).

This is an action by which the plaintiff, Matt Phillips, seeks damages from defendant, Morton Frozen Foods, resulting from personal injuries sustained by plaintiff in a fall which occurred at defendant's plant at Russellville, Arkansas, on November 7, 1965.

Maryland Casualty Company, the workmen's compensation carrier for plaintiff's employer, has filed a motion to intervene in the present action in order to claim its statutory lien on the proceeds of any recovery herein.

The court has jurisdiction by virtue of diversity of citizenship and the amount in controversy.

Plaintiff contended that he was a business invitee on the premises of defendant and that defendant had a resulting duty to use ordinary care to make its premises reasonably safe and to warn plaintiff of latent hazardous conditions, both of which defendant, having full knowledge of such a latent hazardous condition, failed to do. Defendant, on the other hand, denied knowledge of the existence of a hazardous condition, and contended that plaintiff was contributorily negligent and/or assumed the risk of his own injuries. The cause was tried to the court on March 3, 1970.

The following shall constitute the findings of fact and conclusions of law of the court, as contemplated by Rule 52(a), Fed.R.Civ.P.

At the time of the accident, plaintiff was employed by Spickes Brothers Painting Company, which by subcontract was engaged in painting defendant's newly constructed plant in Russellville, Arkansas. On Friday, November 5, 1965, plaintiff's foreman, as was the custom, gave plaintiff and a co-worker instructions regarding work to be completed during the week end. Because of government regulations with respect to food processing, it was necessary to undertake construction and painting work in production areas at times when no food was being handled. On the day of the accident, a Sunday, plaintiff was engaged in painting work in a production area as previously instructed by his foreman, when he was requested by defendant's project engineer to paint some fluid lines attached to quick freezing units in another area of the plant. The project engineer showed plaintiff only the "south bank" or cluster of freezing units, and from ground level pointed out the pipes or lines that required painting. Plaintiff was, however, instructed to paint all such lines that required painting. Almost all of the fluid lines on the units in the south bank were located along the upper edge of the units and could be reached by standing on a conveyor line which ran alongside. After completing work on these units, plaintiff moved to the "north bank" in order to determine whether any lines in that area needed paint. The fluid lines attached to the north bank units ran horizontally over the top and could not be seen from floor level, nor could they be reached by standing on the conveyor. Plaintiff climbed onto a conveyor line at the west end of the north bank units, then stepped onto a "sevice shelf" attached to the end unit, and from there climbed onto the top. He spent approximately fifteen minutes on top of the units, stepping from one to the other, while looking for fluid lines needing paint. After painting two or three short

lines, he returned to the west end of the unit cluster, approximately at the point where he climbed onto the top. Plaintiff then got down on his knees at the edge of the end unit and lowered his paint bucket onto the service shelf; he then rose and began to turn around in order to face the freezing unit climbing down. While turning around, his right foot began to slip, and he fell from the top of the unit to the floor, a distance of eight feet, sustaining injury. After the fall, plaintiff noticed an oily substance resembling hydraulic fluid on his right shoe, which he testified was not on the shoe before he mounted the freezer unit. Within a few minutes after the accident, plaintiff's co-worker climbed to the top of the unit from which he fell in order to determine the cause, and discovered a pool of oil on the west side of the unit.

■ It is well settled in Arkansas that an owner of premises is required to exercise ordinary care to keep the premises reasonably safe for all invitees. Little Rock Land Co. v. Raper, (1968) 245 Ark. 641, 433 S.W.2d 836; Davis v. Safeway Stores, Inc., (1937) 195 Ark. 23, 110 S.W.2d 695. Premises that are "reasonably safe" do not contain hazardous conditions or obstructions that may result in injury to an unsuspecting invitee. An owner of premises may avoid liability by providing timely notice of latent dangerous conditions of which he is, or reasonably should be, aware. Dixon v. United States, (8 Cir. 1961) 296 F.2d 556; St. Louis, I. M. & S. Ry. Co. v. Dooley, (1906) 77 Ark. 561, 92 S.W. 789. An owner is, however, liable regardless of his lack of knowledge of the defective condition if it was also unknown to an injured invitee exercising ordinary care for his own safety, where the surrounding circumstances are such that the owner could and would have known of the dangerous condition had he exercised reasonable care and foresight for the safety of those who might come upon his premises by invitation, express or implied. Faulkinbury v. Shaw, (1931) 183 Ark. 1019, 39 S.W.2d 708.

It is clear that plaintiff was on defendant's premises by invitation. Spickes Brothers Painting Company was a painting subcontractor actively engaged in work on the inside of defendant's plant. It is undisputed that painting work in production areas was, of necessity, performed on week ends and other times when food was not being handled. Moreover, defendant's project engineer specifically requested that plaintiff paint the freezing unit fluid lines on the day of the accident.

■ Defendant must also be charged with knowledge of the continual presence of oil or other fluid on surfaces of and around the freezing units. A maintenance foreman for defendant prior to and at the time of the accident testified that oil was constantly present on the floor as well as the freezer units as a result of expansion, leakage and condensation connected with the operation of the units; he termed the condition "hazardous" and stated that it was particularly bad on week ends during the freezer defrost cycle. Defendant candidly admitted that, prior to the accident, spillage and leakage of fluid in the freezing units occurred on a daily basis, probably as a result of lines breaking, pumps operating improperly, the changing of components, and other causes. Plaintiff's co-worker testified that, prior to the accident, he had occasionally observed oil and other fluid on top of the freezing unit from which plaintiff fell, but that the substance was commonly cleaned up by those working on the units.

It is, therefore, quite clear that defendant was aware of the presence of the fluid and that the condition became acute on week ends. Reasonable men would also conclude that the presence of pools of oil or other fluid on surfaces traversed by workmen constitutes a hazardous condition. Under those circumstances, the failure of defendant to adequately correct or remedy the situation was negligence which was a proximate cause of plaintiff's injuries. Defendant, through its project engineer, was well aware that

plaintiff was working in the area of the freezing units on the day of the accident. It appears that it would have been difficult, perhaps unreasonably difficult, to completely eliminate the leakage of fluid, but defendant's cleaning and maintenance personnel, in the exercise of ordinary care, could have maintained areas in use by workmen in a reasonably safe condition.

Nor can the court accept the contention of defendant that plaintiff assumed the risk of his injuries. The doctrine of assmption of risk is not favored by the Arkansas Supreme Court, Spradlin v. Klump, (1968) 244 Ark. 841, 427 S.W.2d 542, and involves both knowledge and appreciation on the part of the plaintiff of the hazard, Mercury Mining Co. v. Chambers, (1937) 193 Ark. 771, 102 S.W. 2d 543; Carroll v. Lanza, (E.D.Ark.1953) 116 F.Supp. 491, affirmed in part and reversed in part, Lanza v. Carroll, (8 Cir. 1954) 216 F.2d 808, reversed (1955) 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183, and can only be applied in cases where the person may reasonably elect whether he shall expose himself to it. Chicago, R. I. & P. Ry. Co. v. Lewis, (1912) 103 Ark. 99, 145 S.W. 898. In master and servant cases, it has been generally held that an employee assumes all the ordinary risks and hazards incident to his employment and those which are open and obvious. Hall v. Patterson, (1942) 205 Ark. 10, 166 S.W.2d 667; Lee v. Pate, (1939) 198 Ark. 723, 131 S.W.2d 8; M. E. Gillioz, Inc., v. Lancaster, (1938) 195 Ark. 688, 113 S.W.2d 709. An employee does not, however, assume any hazard that is the result of either the master's negligence or the negligence of any other employee unless he is aware of the danger and appreciates it. Walther v. Cooley, (1955) 224 Ark. 1027, 1031, 279 S.W.2d 288; Haynes Drilling Corp. v. Smith, (1940) 200 Ark. 1098, 143 S.W.2d 27; Federal Compress & Warehouse Co. v. Harmon, (1938) 196 Ark. 417, 118 S.W.2d 239; Carson v. Dierks Lumber & Coal Co., (1938) 196 Ark. 163, 117 S.W.2d 39.

In all cases, it is necessary that the defense of assumption of risk be proved by a preponderance of the evidence, Sun Oil Co. v. Hedge, (1927) 173 Ark. 729, 293 S.W. 9, and defendant has clearly failed to establish knowledge and understanding of the danger on the part of plaintiff. There is no evidence in the record that plaintiff, prior to the accident, either observed or was made aware of the fact that oil leakage was common in the area of the freezing units. Plaintiff had previously painted the ceiling in that area of the plant from atop a rolling scaffold, but had no occasion to observe the freezing units closely.

Plaintiff was, however, guilty of contributory negligence at the time of the accident in failing to use his faculties to observe the pool of oil on which it may be inferred he slipped. A person is required to make reasonable use of his ability to see, hear and think to discover dangers to which he is exposed, and a failure to do so is negligence. Walther v. Cooley, supra, at 224 Ark. 1034, 279 S.W.2d 288; St. Louis & S. F. Rd. Co. v. Carr, (1910) 94 Ark. 246, 252, 126 S.W. 850; Phillips Petroleum Co. v. Miller, (8 Cir. 1936) 84 F.2d 148. It is undisputed that the area was well lighted, and the freezing units were painted with gray or tan metal paint, on which foreign matter is easily detectable. Plaintiff's co-worker, who climbed on top of the freezer unit from which plaintiff fell shortly after the accident, immediately located the pool of oil at the point where Phillips attempted to climb down. Plaintiff, in attempting to descend from a height of eight feet without the benefit of a ladder or other assistance, should have been at least equally observant in the exercise of ordinary care for his own safety. It must also be kept in mind that plaintiff was not walking on an entranceway or floor of a business open to the public; he was walking over and stepping between industrial freezing units, the tops of which were laced with pipes and separated by a distance of three feet. He could not, therefore, blindly assume that

defendant's duty to maintain the premises in a reasonably safe condition had been complied with. Moreover, in the course of his work at the time of the accident, plaintiff had spent the previous fifteen minutes looking directly at the tops of the freezing units. It is true that he was looking for unpainted pipes and not for pools of oil, but he cannot be allowed with impunity to close his eyes to that which he otherwise would have seen. It would in fact appear that if the pool of oil was actually located at the point plaintiff slipped and fell, he stood directly over it on at least two occasions in the process of climbing onto the top of the freezer unit and in attempting to climb down. The court finds that the danger would have been observed and discovered by an ordinarily prudent person, and that plaintiff, in failing to discover it, was guilty of negligence which was a proximate cause of his own injuries and resulting damages.

Having found that both plaintiff and defendant were guilty of negligence proximately causing the injuries and damages of plaintiff, it becomes the duty of the court under the statutory law of Arkansas to determine the degree of negligence of the parties.

Ark.Stat.Ann. § 27–1730.1 (Repl.1962) provides:

> "Contributory negligence shall not bar recovery of damages for any injury, property damage or death where the negligence of the person injured or killed is of less degree than the negligence of any person, firm, or corporation causing such damage."

Section 27.1730.2 provides that in all actions for negligence resulting in personal injuries, contributory negligence shall not prevent recovery where any negligence of the person injured "is of less degree than any negligence of the person, firm or corporation causing such damage; provided that where such contributory negligence is shown on the part of the person injured, damaged or killed, the amount of the recovery shall be diminished in proportion to such contributory negligence."

The court finds that plaintiff was guilty of 45 percent and the defendant was guilty of 55 percent of the negligence which proximately caused the injuries and damages of plaintiff.

As a proximate result of the accident on November 7, 1965, plaintiff sustained a ruptured intervertebral disc in the lumbar region of his spine and another in the cervical region. The injury to his lower spine has been corrected by surgery, but plaintiff's physician is of the view that little benefit could be gained from surgery on the cervical region and does not recommend it. Plaintiff presently claims pain emanating from his right leg, lower back, right elbow, left shoulder, headaches, stomach trouble and various other ailments. The physician who performed surgery on him is of the opinion that he will continue to have some discomfort, but that, on the whole, a good result was obtained from surgery. The same physician rates his permanent disability as 35 percent to the body as a whole and feels that plaintiff will have future difficulty with work that requires heavy lifting or sustained bending or standing in one spot. His personal physician rated his permanent disability as 50 percent to the body as a whole, but attributed five percent of that figure to a hiatal hernia which he could not say with a reasonable degree of medical certainty was caused by the accident.

Plaintiff was involved in two automobile accidents in 1959 and another in 1961, all of which resulted in cervical strain, but defendant failed to establish that the previous accidents were causally connected with plaintiff's present difficulties.

Plaintiff continued to work for Spickes Brothers Painting Company for over four months after his fall, drawing wages totalling $1,600.00, but has worked only briefly since April 14, 1966, realizing some $900.00, and indicates no disposition to resume gainful employment in the future. In addition, it seems clear that his physical condition will make it impossible for him to resume work as a painter, at least on a daily basis. His

average income for the five years preceding the accident was $2,311.22, and he might normally be expected to continue working until age 65, or for 16 more years. There is no evidence, however, that he can no longer engage in any kind of gainful employment.

Plaintiff's medical expenses were stipulated to be $3,462.44. His damages include all of his past loss of earnings, a total of $6,744.88, for the reason that corrective surgery was not performed until early in 1969, which was followed by a recovery period of several months. The court has determined plaintiff's future loss of earnings to be $18,489.76, taking into consideration his continuing, though limited, ability to engage in gainful employment, which figure must be reduced to present value, leaving a total of $12,524.04. The court is of the opinion that plaintiff's damages for permanent disability amount to $2,000.00 and that his damages for past and future pain and suffering amount to $3,000.00. He has a life expectancy of 24 years. Phillips has, therefore, sustained damages totalling $27,731.36, which must be reduced 45 percent on account of his negligence. Therefore, judgment for plaintiff should be entered on his complaint in the amount of $15,252.25 and costs.

The motion of Maryland Casualty Company to intervene in this action should be granted, and it is entitled to a first lien upon two-thirds of the net proceeds recovered herein pursuant to Ark.Stat. Ann. § 81–1340 (Repl.1960). Plaintiff and intervenor are directed to execute a joint stipulation as to the amount of such lien and to file the same with the Clerk of the Court as soon as reasonably possible.

## SUPPLEMENTAL OPINION

An additional question has been raised regarding the distribution of the proceeds recovered herein. The contract between plaintiff and his attorney provides for a fee of 50 percent of the net recovery. It is specifically urged by plaintiff's attorney that attorneys' fees are part of the "reasonable costs of collection" contemplated by Ark.Stat.Ann. § 81–1340 (Repl.1960), and that his fee should accordingly be paid prior to dividing the recovery between plaintiff and intervenor. That argument has been rejected by this court in Saint Paul-Mercury Indemnity Co. v. Lanza, (W.D.Ark. 1955) 131 F.Supp. 684, affd. Saint Paul-Mercury Indemnity Company v. Sisney, (8 Cir. 1956) 232 F.2d 747, and has not been squarely met by the Arkansas Supreme Court. See Maxcy v. John F. Beasley Construction Co., (1957) 228 Ark. 253, 306 S.W.2d 849; Winfrey & Carlile v. Nickles, (1954) 223 Ark. 894, 270 S.W.2d 923.

Ark.Stat.Ann. § 81–1340 provides in part:

"Third party liability.—(a) Liability unaffected. (1) The making of a claim for compensation against any employer or carrier for the injury or death of an employee shall not affect the right of the employee, or his dependents, to make claim or maintain an action in court against any third party for such injury, but the employer or his carrier shall be entitled to reasonable notice and opportunity to join in such action. If they, or either of them, join in such action they shall be entitled to a first lien upon two-thirds [⅔] of the net proceeds recovered in such action that remain after the payment of the reasonable costs of collection, for the payment to them of the amount paid and to be paid by them as compensation to the injured employee or his dependents."

In Winfrey & Carlile v. Nickles, supra, Nickles was killed while in the scope of his employment with Winfrey & Carlile. St. Paul Mercury Indemnity Company, as compensation carrier, began making payments to the decedent's dependent parents. The Steins, occupants of the vehicle which collided with Nickles, brought suit against his administrator, who counterclaimed for damages for Nickles' death. St. Paul was also the liability carrier for the Steins, and accordingly hired another attorney to file an inter-

vention in the Stein-Nickles litigation in order to claim its workmen's compensation lien. St. Paul was thus put in the position of claiming a lien upon the proceeds of any recovery on the Nickles counterclaim and at the same time defending against that cause of action. The trial of the case resulted in a verdict for Nickles' administrator in the amount of $6,433.10. The attorney for St. Paul as intervenor took no active part in the trial. The question of distribution was referred by agreement to the Workmen's Compensation Commission, which deducted court costs and trial expenses incurred by Nickles' administrator and then directed that two-thirds of the remainder be paid to St. Paul and the other one-third be divided equally between the administrator and his attorneys, whose contract provided for a contingent fee of fifty percent of any amount recovered, after the payment of court costs and other expenses. On appeal, the Circuit Court set aside the Commission's order and held that, after deduction of costs and expenses, the administrator's attorneys were entitled to one-half of the entire net recovery, with two-thirds of the remaining half to be awarded to St. Paul and one-third to Nickles' administrator. The sole issue on appeal, according to the Arkansas Supreme Court, was whether the attorneys for the administrator were entitled to share in St. Paul's part of the net recovery, thus implicitly deciding the question whether attorneys' fees are part of the "reasonable costs of collection." The court stated at 223 Ark. 900–901, 270 S.W.2d at 927:

"Had it not been for St. Paul's dual liability the employment of counsel would have come about in this fashion: Nickles, as administrator, retained the Hardin firm as his attorneys, for an agreed fee of half of his interest in the recovery. St. Paul would then have had a genuine interest in the case, since it stood to recoup its entire compensation liability from the third-party tort-feasor. Accordingly St. Paul might either have retained the Hardin firm as its counsel, for a compensation

mutually agreed upon, or have employed another attorney of its own choice. *In either event the present question would not have been likely to arise, for ordinarily the court would simply have apportioned the recovery between the two plaintiffs, leaving each to pay his own counsel.* Thus in the normal situation St. Paul would incur liability for an attorney's fee in the *course of pursuing the tort-feasor.*" (Emphasis supplied.)

The court went on to affirm the trial court's award of half of the net recovery to the attorneys for the administrator, not because the fee was a part of the reasonable costs of collection but on the theory of quasi or constructive contract. The administrator's attorneys were awarded one-half of the administrator's share of the recovery and one-half of St. Paul's share of the recovery because the recovery was due solely to their efforts. The court stated at 223 Ark. 901–902, 270 S.W.2d at 927:

"Accordingly it was entirely through the efforts of the Hardin firm that Nickles recovered a judgment for $6,-433.10. That St. Paul stood to lose rather than to win by their services had no bearing upon the time, effort, and skill required in the preparation and trial of the case. Nor should this law firm be penalized by reason of St. Paul's unhappy predicament. * * * The circuit court was right in assessing this attorney's fee upon the basis of what would have been fair had St. Paul been a wholehearted and enthusiastic cross-complainant in the litigation, and it is not contended that in that situation the sum allowed would be excessive."

The Arkansas court also indicated quite clearly, and this court agrees, that it is expeditious and preferable that the trial court determine the distribution of the recovery. The court stated at 223 Ark. 900, 270 S.W.2d at 926:

"Here we have a contested tort action, involving a trial that lasted for two days. The Commission is certainly in

no position, without a hearing, to determine what is reasonable compensation for the plaintiffs' counsel. For it to make that determination in a case of this kind the record might have to be transcribed and submitted to the Commission. What began as one lawsuit might easily become two.

"The circuit judge, on the other hand, is obviously the person best able to fix the fee. Not only has he presided over the trial but he is qualified by training and by experience to assess reasonable compensation for legal services. It would be manifestly illogical to require the circuit judge to surrender jurisdiction over a matter in which his own judgment is peculiarly valuable."

■■ This court, in Saint Paul-Mercury Indemnity Company v. Lanza, supra, squarely held that attorneys' fees are not part of the costs of collection under the Arkansas statute and that normally the court should apportion the recovery between the plaintiffs, leaving each plaintiff to pay his or its own counsel. The attorneys for the insurance carrier there contended they were entitled to a share of the compensation beneficiary's recovery on the theory of constructive or implied contract, but the court rejected that argument for the reason that all of the work done by the attorneys was necessary in their representation of the compensation carrier and was referable to that contract and, more important, because the attorney for the compensation beneficiary performed considerable preliminary work in his representation of the injured employee.

■■ The situation here closely resembles that in Winfrey & Carlile, in that Maryland Casualty Company, as workmen's compensation insurance carrier for Spickes Brothers Painting Company, filed its motion for intervention one week before the trial of this cause, and contributed nothing except the physical presence of its attorney. Early in these proceedings, plaintiff specifically requested intervenor to participate in the cost of developing the case and it refused. Intervenor could have rejected the services of plaintiff's attorney by actively participating in the development or trial of the case, but it did not choose to do so. Under these circumstances, Maryland Casualty cannot accept the benefits of those services without the payment of a reasonable fee.

It should be added that the interests of plaintiff and his attorney are in nowise adverse at this stage of the case, as plaintiff's share of the recovery would be the same, whether his attorney's fee is regarded as part of the costs of collection or is held to be 50 percent of the share of plaintiff or 50 percent of the combined shares of plaintiff and intervenor.

The sum of $15,252.25, plus $219.00 in taxable costs should be paid by defendant into the registry of the court. Plaintiff and intervenor have stipulated that expenses incurred herein by plaintiff's attorney in trial preparation amount to $623.07, leaving a net recovery of $14,629.18, which should be distributed as follows: Maryland Casualty Company, as of April 23, 1970, had paid plaintiff benefits totaling $11,799.80, and its share of the proceeds amounts to $9,752.79; leaving plaintiff $4,876.39. Plaintiff's attorney will be awarded as a reasonable attorney's fee 50 percent of plaintiff's share and 50 percent of intervenor's share of the net recovery, or $7,314.60. The sum awarded to intervenor, after deducting the attorney's fee, should be $4,876.39; the sum awarded to plaintiff, after deducting the attorney's fee, should be $2,438.19.

A judgment in accordance with the above should be entered.