Cite as 2024 Ark. App. 224

# ARKANSAS COURT OF APPEALS
## DIVISION IV
No. CV-22-202

| | |
|---|---|
| ROBERTO RODRIGUEZ<br><br>APPELLANT<br><br>V.<br><br>MANGARAJU CHAKKA; KANTH DASARI; JOHN DOE I; JOHN DOE II; AND JOHN DOE III<br><br>APPELLEES | Opinion Delivered April 3, 2024<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION<br>[NO. 60CV-20-2453]<br><br>HONORABLE MACKIE M. PIERCE, JUDGE<br><br>AFFIRMED |

**RITA W. GRUBER, Judge**

Roberto Rodriguez appeals the Pulaski County Circuit Court order granting summary judgment to Mangaraju Chakka and Kanthi Dasari (appellees). We affirm.

Rodriguez filed suit against appellees due to injuries he sustained in a fall from a second-floor balcony at their house. He alleged that he was a business invitee on the premises; the lack of a railing caused him to fall; his injuries were severe; and appellees had a duty to use ordinary care to maintain the premises in a reasonably safe condition. He claimed that appellees knew or should have known of the dangers related to the premises and the defects in the premises and had a duty to warn of such dangers. He also claimed that the premises

was not in a reasonably safe condition and that the condition was a proximate cause of the injuries and damages he sustained.[1]

Appellees responded to the complaint, denying they were liable for his injuries. They subsequently moved for summary judgment, stating that Arkansas law in relation to premises liability is clear—a homeowner has a duty to warn invitees only of hidden dangers that are not known or obvious. They argued that the danger in their home was open and obvious; Rodriguez knew of the danger; and they had no duty to warn him of it. They further argued that hiring a contractor to remedy a condition necessarily warns the contractor of its existence; and because Rodriguez continued to work, he assumed the risk of falling from the balcony. The circuit court granted summary judgment to appellees at the conclusion of a hearing on the basis of the arguments appellees presented in their brief and at the hearing.

On appeal, Rodriguez contends that the circuit court improperly interpreted the following issues of law and fact. Under the open-and-obvious doctrine, the homeowner's duty is not confined by the injured person's knowledge of the condition. A genuine dispute of material fact remains regarding Rodriguez's employment and scope of employment. He

---

[1]Rodriguez's original complaint stated only that he sought damages against five John Doe defendants for injuries that occurred in Little Rock, Pulaski County, Arkansas. Several amended complaints followed. In his first amended complaint, Rodriguez identified Chakka and Dasari as two of the John Doe defendants and as owners of the Little Rock home where the incident occurred. Rodriguez moved to dismiss the remaining John Does without prejudice; he abandoned any pending but unresolved claims, including any claims against the three John Doe defendants, in his notice of appeal. The circuit court granted the motion to dismiss the John Does without prejudice.

was forced as a practical matter to face this danger, which was not integral to his job, and he did not assume any risk.

On the other hand, appellees contend that the circuit court's grant of summary judgment was proper because Rodriguez knew or should have known of the presence of the condition that caused his injury and knew or should have known of the dangerous nature of that condition.

Our summary-judgment standard is well settled. Summary judgment may be granted only when there are no genuine issues of material fact to be litigated. *Patterson v. Bennett*, 2022 Ark. App. 75, at 7. On appellate review, this court determines if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Rogers v. Kemp*, 2023 Ark. App. 302, at 5, 669 S.W.3d 584, 588. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings but also on the affidavits and other documents filed by the parties. *Id.* As to issues of law presented, our review is de novo. *Id.*

On a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries. *Shook v. Love's Travel Stops & Country Stores, Inc.*, 2017 Ark. App. 666, at 3, 536 S.W.3d 635, 637. Because the question of what duty is owed is one of law, we review it de novo. *Lloyd v. Pier W. Prop. Owners Ass'n*, 2015 Ark. App. 487, at 4, 470 S.W.3d 293, 297. If the court finds that no duty of care is owed, the negligence count is

decided as a matter of law. *D.B. Griffin Warehouse, Inc. v. Sanders*, 349 Ark. 94, 106, 76 S.W.3d 254, 262 (2002). Under these standards, we conduct our review.

Rodriguez, a handyman, had done various jobs for appellees before the incident at issue in this case. Appellees hired Rodriguez to design, build, and install iron railings on the second- and third-floor balconies of their home. Another contractor had already expanded the decks of appellees' house and installed temporary railings on the balconies.

The temporary railings had been removed at some point[2] before Rodriguez began installing the new iron railings. He constructed the new iron railings on the ground floor. Taking advantage of there being no railings on the second level, he first hoisted the new iron railings to the second level, which was nineteen feet above the ground. He then hoisted the iron railings from the second level to the third and installed them. Rodriguez had been working at the house for about ten days prior to the day he fell—a Saturday.

That Saturday morning, Rodriguez had been working on the home's third-level exterior siding. Around lunch time, Chakka asked him to look at a leak in the attic. Rodriguez accessed the attic through a third-floor bathroom opening by climbing a ladder that Chakka held and jumping from the ladder into the attic. Rodriguez discovered a leak in the air-conditioning unit, determined that an expert was needed, tied off the leak with something Chakka gave him, and exited the attic into the third-level interior of the house.

---

[2]It was believed that a third contractor doing stucco work removed the temporary railing on the second-floor balcony in the course of his work.

Rodriguez walked down to the rail-less second-floor balcony. He testified that it was so hot in the attic that all he could think of was needing to breathe fresh air; he was not thinking about the balcony or about falling. When asked if the heat caused him to "get lightheaded or anything similar," he answered: "Not exactly. So in the attic there is a lot of insulation, and I didn't have a mask so I felt like a lack of oxygen [sic] that I wasn't able to breathe enough."

Rodriguez testified that when he went outside to the second-floor balcony, he heard noise on the third floor and looked up. He thought perhaps someone was on the third level or the wind was moving something, and he wanted to see what was going on. He said that when he looked up, "I guess I was really close to the edge and that's when I fell . . . . [I] looked up. Maybe backed up. Maybe that's why. I don't know why I fell." He said that he never thought he could fall from the balcony.

The circuit court made oral findings at the conclusion of the summary judgment hearing.

> [U]nfortunately, the Plaintiff knew of the danger. He was hired to work on this danger. The testimony was, he wasn't lightheaded. He doesn't go out on the third-floor balcony. He doesn't go out the front door. He doesn't go out any other door. He walks out on the balcony which he has utilized to perform some of his repair work on the railing, so he knows there's no railing there. He is well aware of it. The homeowner . . . has hired him to do this dangerous job. And I find that, based upon the reasons stated in Defendants' brief and argument today, the motion for summary judgment is granted. And that's taking all inferences in favor of the Plaintiff, in looking at this in the light most favorable to Mr. Rodriguez, I just don't see any way that he was forced and that—you know, he wasn't forced to encounter that danger on the second floor, and . . . his being there was, you know, part of his job.

The court entered its written order on February 7, 2022, and Rodriguez timely appealed.

5

It is undisputed that Rodriguez was working for appellees the day he fell; he knew there was no railing on the balcony; and he fell and was injured. Appellant and appellees agree that Rodriguez was an invitee on appellees' property. Appellees contend that their duty to him was satisfied if he knew or should have known of the dangerous condition due to it being open and obvious. *Van DeVeer v. RTJ, Inc.*, 81 Ark. App. 379, 385, 101 S.W.3d 881, 884 (2003). The test requires a showing both that the condition was known or obvious and that the dangerous condition was known or obvious. *Id.*

Rodriguez concedes that he knew of the lack of the railing and therefore knew of the condition. However, he alleges that a factual question remains as to whether he knew or should have known of the nature of the dangerous condition. He contends that summary judgment was improper due to his not appreciating the dangerous nature of the condition.

Rodriguez relies in part on *Noel* v. *Cox*, 2019 Ark. App. 70, at 7, 570 S.W.3d 510, 515, where summary judgment was inappropriate because questions of fact existed as to whether the danger was open and obvious. In that case, Noel was social guest at a townhouse complex where he sustained injuries in a fall from a retaining wall where there was no railing. Noel did not live at the complex and visited only occasionally, entering through a gate, and walking down a boardwalk where the property owner's association maintained some retaining walls and landscaping. Around 10:00 p.m., he was going home from a townhouse in the complex; he walked down a set of stairs onto the retaining wall and fell. The drop-off where he fell was forty-two inches. Noel presented evidence to the circuit court that a reasonable person in his position—walking down stairs at night in an unfamiliar location in

6

dimly lighted conditions onto a small landing with a drop-off—would not have recognized or appreciated the risk of a drop-off from a wall just a few feet away and hidden by landscaping. 2019 Ark. App. 70, at 8, 570 S.W.3d at 515. Although there was some evidence that Noel knew there was no guardrail, we found that an issue of fact remained regarding whether he knew or should have known of the danger.

On the Saturday of his fall, Rodriguez had been interacting with the rail-less second-floor balcony for more than a week and had taken advantage of the lack of railing to hoist new rails up to the next level. He was fully aware of the second level's nineteen-foot height and the drop-off, and he certainly knew or should have known that a fall from there would be dangerous. The accident happened in the middle of an August day in a familiar, well-lit area with a known drop-off that was not obscured. Thus, *Noel* is inapplicable to the facts of this case.

Rodriguez also relies on *Delima v. Wal-Mart Stores Arkansas, LLC*, No. 5:17-cv-5244-TLB, 2018 WL 6729994 (W.D. Ark. Dec. 21, 2018), where the plaintiff brought a negligence lawsuit against the corporation for failing to properly control a crowd of Black Friday shoppers. She contended that she was in a designated line for the 8:00 p.m. sale of Samsung Galaxy tablets and was injured when the beginning of the sale was announced, and the crowd rushed forward. *Id.* at *2.

In *Delima*, Wal-Mart moved for summary judgment on the ground that Delima knew of the danger due to its being open and obvious, contending that any duty it would otherwise have owed to her as an invitee was obviated by the fact that the dangerous condition was

open and obvious. *Id.* at *12. Delima testified that she had never been injured in other sales, and there was nothing in the record to establish that she had any idea that this particular crowd would pose a danger that previous sales crowds had not. *Id.* at *14. The court ruled that Delima's testimony created questions of fact about whether Wal-Mart's handling of the sale was negligent and exacerbated the likelihood that someone in her position would be injured; thus, summary judgment was improper. *Id.* at *16.

The particular circumstances of the present case, as summarized above, distinguish it from *Delima*. A person in Rodriguez's position would have known of the dangerous nature he had been hired to remedy—the drop from the nineteen-foot balcony.

Rodriguez asks us to adopt an additional exception to the open-and-obvious rule, which relates to a higher obligation to warn a person who may have forgotten about a danger they previously knew of or whose attention will be distracted. He argues that reasonable minds could differ from the circuit court's conclusion that he was not lightheaded or distracted and could conclude that appellees—given their knowledge of the potential risk— had a duty to warn or prepare for a circumstance where it was likely he would be distracted or unaware of it. *See Greene v. Twistee Treat USA, LLC*, 302 So.3d 481 (Fla. Dist. Ct. App. 2020) (the novel architecture of a giant ice-cream-cone-shaped building would potentially lead a patron to become distracted to the point that he would not be thinking of potential injury of a nearby hazard); *Bangert v. Wal-Mart Stores, Inc.*, 695 N.E.2d. 56 (Ill. App. Ct. 1998) (a patron was struck in the store's parking lot, and the proper inquiry was whether the store's duty to use reasonable care with regard to its premises extended to a duty to maintain traffic-

and/or pedestrian-control devices for patrons' protection). Our case law is well established regarding the open-and-obvious-danger rule, and it is not the role of this court to adopt a new exception.

In Arkansas, the only recognized exception to the open-and-obvious-danger rule is when a business invitee is forced, as a practical matter, to encounter a known or obvious risk in order to perform his job. *Van DeVeer*, 81 Ark. App. at 389, 101 S.W.3d at 884; *Hope Med. Park Hosp. v. Varner*, 2019 Ark. App. 82, at 7, 568 S.W.3d 818, 823. The "forced encounter" exception does not apply when the dangerous condition is integral to the work. *D.B. Griffin Warehouse, Inc. v. Sanders*, 349 Ark. 94, 106, 76 S.W.3d 254, 262 (2002).

In *Hope*, the exception did not apply because the plaintiff in a sidewalk fall was not truly forced to encounter a tree root in the sidewalk. *Id.* at 7, 568 S.W.3d at 823. The evidence was that she could have taken a different path that did not have a root in it. *Id.*

Here, there was testimony that Rodriguez was not forced to use this specific balcony and that he voluntarily chose to access it instead of using a different and safer path to get fresh air. The testimony was that when he exited the attic, he was on the third floor of the house, where he had already completed the balcony railing, thus making it a much safer option. There was also testimony that he was headed to his car in front of the house for lunch before he went into the attic, thus showing that instead of using a side door to access the dangerous balcony, he had the option of using a different exit.

There was simply no evidence that Rodriguez was forced to use the second-level balcony at the time of the fall, and—similarly to *Hope*–there were reasonable, safe alternatives.

Because Rodriguez was not forced to encounter the danger of the rail-less balcony, this exception to the open-and-obvious-danger rule does not apply.

Appellees contend that Rodriguez is barred from recovering on his claim because he assumed the risk of the danger. The law on this point is substantially similar to the law on open and obvious dangers: "[a]n employee assumes the ordinary risks incident to his job, which are both open and obvious." *Baxter v. Grobmyer Brothers Constr. Co.*, 275 Ark. 400, 403, 631 S.W.2d 265, 267 (1982). The defense of assumption of the risk requires proof that the plaintiff knew the danger existed and realized the risk he was assuming. *Id.* at 402, 631 S.W.2d at 267. Application of the rule is particularly sound where the employee has discretion regarding how or where the work is to be done. *Id.* at 403, 631 S.W.2d at 267. The doctrine of assumption of the risk is generally applied as part of the law of master and servant but may be applied in other instances. *Bugh v. Webb*, 231 Ark. 27, 33, 328 S.W.2d 379, 382 (1959).

In *Baxter*, a worker who fell from the top of a wall claimed that he lost his balance because an improperly cemented brick had shifted under his weight. The employer contended that the worker fell because he was walking with one foot on the wall and the other on an unsecured bar joist. 275 Ark. at 402, 631 S.W.2d at 266–67. The worker was not the person who constructed or modified the wall. The *Baxter* court held that it was proper to instruct the jury on assumption of the risk. Here, however, Rodriguez admitted that he was hired to construct the railing on the balcony at issue. The absence of the railing was thus

not a risk incident to his job, which was to remedy the risk by constructing a railing. Remedying a dangerous condition necessarily includes assuming the risk against that danger.

Rodriguez complains that the circuit court failed to consider certain disputed facts. We agree with appellees that those facts either are undisputed or are irrelevant.

Rodriguez first argues that the amount of time he spent in the attic is disputed; that fact, however, is irrelevant to issues in this case. Rodriguez testified that he needed fresh air but was not lightheaded and had not forgotten the absence of the railing on the second-floor balcony. He attributed his fall not to being hot in the attic but to a distracting noise.

Second, Rodriguez argues that the circuit court failed to consider evidence of OSHA violations, which should have been reserved for a jury in deciding if appellees had a duty beyond a simple warning. In part, he cites the language of *Chew v. American Greetings Corp.*, 754 F.3d 632, 636 (8th Cir. 2014): "The characteristics of the parties and the circumstances of their encounter may trigger a unique duty that imposes a distinct standard of care that departs from the typical standard of ordinary care." He points to testimony that appellees continued the balcony project amidst clear statutory and regulatory violations concerning the lack of a safe, temporary railing and construction-code violations, even after permits obtained by their general contractor were revoked. He fails to acknowledge, however, *Chew*'s holding that any additional duty owed under this unique duty is "analogous to those a premises owner owes a business invitee" and does not include a duty to warn of known or obvious dangers. *Id.* As such, this argument is irrelevant in this case.

11

Finally, Rodriguez argued to the circuit court that appellees tried to cover up the fall in posttrial behavior by attempting to hide the location of the fall and paying him to be quiet about it. Chakka testified that he immediately called 911 for an ambulance to come to the house when he found Rodriguez on the ground; he called the emergency room and a neurosurgeon at the hospital where he worked as a doctor; and he prepared the neurosurgeon for Rodriguez's arrival by telling him what had happened.

Rodriguez admits on appeal that he has no evidence of any intent that Chakka had besides paying him the remainder of the amount he was owed, and he admits that other testimony was consistent with Chakka's testimony. However, he argues that this "cover up" created an issue of credibility. The circuit court correctly disregarded the entirety of this argument because Rodriguez's story is unsupported by the actual evidence. Moreover, the alleged credibility issue has no bearing on whether appellees owed or breached any legal duty.

In conclusion, the evidence presented did not leave a material fact unanswered. Rodriguez knew of the condition that caused his injury and knew the dangerous nature of that condition. Accordingly, we affirm the grant of summary judgment.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*David A. Hodges* and *Gary Green*, for appellant.

*Munson, Rowlett, Moore & Boone, P.A.*, by: *Zachary Hill*, for appellees.